## McCOMBS et al. v. STEWART et al.
### No. 1810.

Court of Civil Appeals of Texas. Eastland.
June 3, 1938.

W. W. Farmer, Jr., of Graham, and Thomas & McDonald, of Big Spring, for appellants.

Sullivan & Sullivan, of Big Spring, for appellees.

LESLIE, Chief Justice.

Mary Lou McCombs, for herself, and as next friend for her daughter, Johnnie Lou McCombs, instituted this suit against Clayton Stewart and Garland Sanders to recover damages for personal injuries sustained by themselves and for the death of John McCombs, the husband of Mary Lou McCombs, and the father of Johnnie Lou McCombs, alleging such injuries and death to be the proximate result of negligent acts of the defendants and their servants in causing a collision of a truck with a car in which plaintiffs were driving. The defendant Stewart answered by general demurrer, general denial, and specially alleged as a matter of defense that Clifton Sanders, the driver of the truck at the time of its collision with plaintiffs' car, was an independent contractor, and that he, Stewart, exercised no control or management over him, or any of his employees. Defendant Sanders adopted the pleadings of Stewart.

Plaintiffs replied by general denial, and, in the alternative alleged, that if a contract existed between Clayton Stewart on the one hand, and Garland Sanders and Clifton Sanders, or either, on the other, such as to render the theory of master and servant unavailable to plaintiffs as a ground of recovery, that nevertheless said Stewart and the Sanders brothers entered into a contract in violation of positive law in that it contemplated that said independent contractor or contractors were to transport a load of cattle in excess of 7,000 pounds in weight over the public highway and by common carrier points, etc.

The trial was before the court and jury and at the conclusion of the testimony a verdict was instructed in favor of the defendants. From a judgment thereon this appeal is prosecuted.

On or about July 21, 1936, Clayton Stewart, a ranchman, telephoned defendant Garland Sanders with a view of employing him, as he had theretofore done, to trans-

port two truck loads of cattle from his ranch in Borden County to the market at Fort Worth, Texas. Garland Sanders answering the phone informed Stewart that he was not then in the trucking business and had theretofore sold his trucks to his brother, Clifton Sanders. Garland Sanders immediately communicated to his brother Clifton Sanders the fact that Stewart desired to make said shipment of cattle. In response to these communications Clifton Sanders and a man by the name of Page showed up the next morning at Stewart's ranch and loaded their trucks with the cattle which they contracted with Stewart to carry to their destination at Fort Worth, Texas, for the sum of $30 per truck load.

Preparatory to the shipment, Clayton Stewart had the cattle gathered into the corral and was present "seeing them loaded" making some suggestions relative to minor details preparatory to getting the stock in transit. In this connection he stated to them that if there were too many cattle for the two loads to cut some back.

Neither Stewart nor Garland Sanders went with him in the truck, and, according to the testimony, Garland Sanders had no more to do with the shipment of the cattle than that above indicated. It would seem to be unnecessary to discuss further the personal liability, if any, of Garland Sanders, and the court committed no error in instructing a verdict in his favor.

As to the liability of Clayton Stewart, the plaintiffs' main contention predicates the right to recovery in this suit upon the principle involved in the relation of master and servant. That in undertaking to transport and deliver the load of cattle to the designated commission merchant at Fort Worth, the Sanders brothers were merely servants of said Stewart, the owner of the cattle, and that he was liable for the injuries proximately caused by the alleged negligence of the Sanders brothers, or either of them.

If Stewart is to be held liable upon such theory, then the testimony must bring him within the definition of "master" as that term is construed and defined by the authorities in this State. In Smith Bros. Inc. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145, our Supreme Court quotes with approval from Cunningham v. Internation-

al Railroad Co., 51 Tex. 503, 32 Am.Rep. 632, the following definition of master (94 S.W.2d page 148): "He is deemed the 'master' who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details." The same opinion (Smith Bros. v. O'Bryan) also quotes from Shannon v. Western Ind. Co., Tex.Com.App., 257 S.W. 522, 523, the definition of the same term, taken from Street on Personal Injuries, reading as follows: "No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.'" The language in which the principle or test is expressed varies somewhat in the different cases according to the peculiar facts and circumstances involved, but the principle is the same and the above definitions are believed to be correct and to have the express approval of the Supreme Court. They will be taken as a guide in interpreting the testimony in the instant case from the standpoint of the plaintiffs.

On the other hand, it is the defendants' contention, and especially that of Stewart, that the service which he engaged Sanders to perform was that of an independent contractor, and as to him said Sanders at all times bore that relationship. Again referring to the opinion in Smith Bros. v. O'Bryan, supra, we find the Supreme Court approving as "the simplest and perhaps the most accurate definition, abstractly speaking, of an independent contractor" the following: "'An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed.'" (19 A.L.R. p. 226, et seq.)

In that connection discussing the elements that constitute the relationship of master and servant the Supreme Court also remarked that "Our decisions have for a long time emphasized the necessity of control over the details of the work to be done and the means by which it is done in order to create the relationship of master and servant." In discussion and also the definitions the relationship of master and serv-

ant is differentiated from that of independent contractor.

■ With the above tests in mind we examined the testimony. In so far as it bears upon the contentions now under consideration, it was adduced by the plaintiffs who put upon the witness stand the defendants Stewart and Garland Sanders. As pointed out, Clifton Sanders owned the truck, drove it himself, furnished his own fuel and equipment, and defrayed his own expenses. He selected his own means and methods of performing the work, and chose the course or highways over which to transport the stock to the place of destination. While passing through Parker County his truck collided with the automobile in which the plaintiffs were riding and in that unfortunate accident the injuries herein alleged were sustained.

Stewart did not go with the shipment of cattle but remained on his ranch and was unaware of the accident until sometime thereafter. In engaging the service of Sanders he reserved neither the right nor power of control over the details of the work, or the manner and method adopted by Sanders for the transportation of the load of cattle, for which service he was to receive $30. Sanders was free to do the work as he saw fit. The testimony is clear and conclusive that Sanders at the time of the accident was transporting the cattle to market in the capacity of an independent contractor, as that term is defined and applied in the authorities generally. American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W. 2d 370, 107 A.L.R. 409; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S. W.2d 416; Riggs v. Haden Co., 127 Tex. 314, 94 S.W.2d 152; Moore v. Roberts, Tex. Civ.App., 93 S.W.2d 236, writ refused; Dave Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W.2d 693; Lone Star Gas Co. v. Kelly, Tex.Com.App., 46 S.W.2d 656; Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Evans v. Bryant, Tex.Civ. App., 29 S.W.2d 484, writ refused; National Cash Register v. Rider, Tex.Com.App., 24 S.W.2d 28; King v. Galloway, Tex.Com. App., 284 S.W. 942.

It necessarily follows that we are satisfied that the testimony is not sufficient to raise an issue involving the relation of master and servant as between Stewart and the Sanders brothers, or either of them. Moore v. Roberts, Tex.Civ.App., 93 S.W. 2d 236, writ refused, and authorities there cited.

As previously noticed, the evidence suggests no liability on the part of Garland Sanders on any theory. In response to the telephone call from Stewart he seems to have performed a gratuitous service by informing his brother Clifton that Stewart had two truck loads of cattle to be transported to Fort Worth. He neither had nor exercised any control over his brother Clifton in transporting the cattle, defrayed none of the expenses, etc.

■ There is another contention by plaintiffs to the effect that if it be conceded that the driver of the truck was an independent contractor at the time of the accident, nevertheless Stewart would be liable as for a tort in that the truck was loaded with cattle to be driven on the highway beyond a common carrier point with a load weighing in excess of 7,000 pounds. That such undertaking was in violation of positive law.

There were no scales at the point of loading. There is no evidence of a specific contract or understanding that the load should be excessive. Testimony is that Stewart cautioned the parties not to overload a truck and to cut back what was necessary in order to avoid doing so. The testimony is to the effect that the truckers did their own loading. Further, there is no evidence that the overweight, if any, was a proximate or contributing cause of the injuries. So far as the evidence shows, the accident would have occurred had the truck been empty and the vehicles had met at the time and place of the unfortunate accident. No connection between the overloading, if any, and the injury is shown. Under the circumstances of the case it is analogous to that of Worsham Buick Co. v. Isaacs, 121 Tex. 587, 51 S.W.2d 277, 86 A.L.R. 232, in which it was held that an automobile company's violation of a statute in permitting its employee to operate its automobile (bearing dealer's license plate) for other than demonstration purposes did not render it liable for injuries not proximately resulting therefrom.

In the instant case the evidence is to the effect that the truckmen were reliable and competent in their line of work.

■ Under the view thus taken of the case it becomes unnecessary to discuss the questions of negligence of the driver. The exclusion of certain testimony, the nature of which is not disclosed by any bill of exception, nor in any other way, presents no

error. Connellee v. Magnolia Pet. Co., Tex.Civ.App., 54 S.W.2d 577; S. H. Kress & Co. v. Brashier, Tex.Civ.App., 50 S.W. 2d 922; Clifton Merc. Co. v. Haverbekken Bros., Tex.Civ.App., 17 S.W.2d 856.

For the reasons assigned, the judgment of the trial court is affirmed.