ELDON BERRY ET AL V. GOLDEN LIGHT COFFEE COMPANY.

No. A-7226. Decided July 15, 1959.
Rehearing Overruled October 7, 1959.
(327 S.W. 2d Series 436)

*Nolen Sewell,* of Decatur, *Strasburger, Price, Kelton, Miller & Martin, John H. Hall* and *Royal H. Brin, Jr.,* of Dallas, for petitioners.

The Court of Civil Appeals erred in affirming the summary judgment in favor of respondent since as a matter of law, the respondent was liable along with the owner and driver of the truck, for the driver's actionable negligence if any, because it occurred during the furtherance of an admitted unlawful conspiracy between the Coffee Company and owner of the truck. Gulbenkian v. Penn, 151 Texas 412, 252 S.W. 2d 929; State v. Standard Oil Co., 130 Texas 313, 107 S.W. 2d 550; Mundy v. Pirie-Slaughter Motor Co., 146 Texas 314, 206 S.W. 2d 587.

*Gibson, Ochsner, Harlan, Kinney & Morris,* of Amarillo, *Leachman, Gardere, Akin & Porter* and *Henry D. Akin,* of Dallas, for respondent.

In response to Petitioners points, cites, Worsham Buick Co. v. Isaacs, 121 Texas 587, 51 S.W. 2d 277; McCombs v. Stewart, 117 S.W. 2d 869; Linden Lumber Co. v. Johnston, 128 S.W. 2d 121.

MR. JUSTICE NORVELL delivered the opinion of the Court.

The automobile-truck collision out of which this lawsuit arose occurred on U. S. Highway 81 in Wise County, Texas. Douglas Earl Berry, the driver of the automobile, was killed and his thirteen months old son received injuries which subsequently proved fatal. His wife, Kathryn Berry, likewise sustained serious bodily injuries. She brought this action against Golden Light Coffee Company, a corporation, E. N. Cunningham and Joe Franklin Barham, the driver of the truck, and was joined therein by Eldon Berry, who owned the automobile which was demolished by the collision. Plaintiffs' theory of liability on the part of Golden Light was based upon an alleged conspiracy to violate the motor transport laws of this State.

Summary judgment based primarily upon the depositions of Barham, Cunningham and Hugh C. Donnell, president of Golden Light, was rendered in favor of the coffee company, and that portion of the action severed from the grounds of recovery asserted against Barham and Cunningham so as to render the summary judgment appealable. The Court of Civil Appeals affirmed. 320 S.W. 2d 684.

The depositions which we must construe in the light most favorable to petitioners disclose the following: Cunningham held a permit from the Railroad Commission of Texas which authorized him to haul lumber, machinery and certain other equipment and commodities, but he possessed no authority to transport coffee. Golden Light was not in an economic position to operate its own trucks. However, some years prior to the collision here involved, Golden Light, acting through Donnell and Cunningham, entered into an agreement whereby Cunningham agreed to transport green coffee from Houston to Amarillo, Texas for an agreed compensation of 51 cents per hundred pounds. This agreement was illegal in that it was contrary to the provisions of the Texas Motor Carrier Act, Article 911b, Vernon's Ann. Texas Stats. Both parties knew that their contract was contrary to law and entered into the same with the deliberate purpose of circumventing the statute by making it appear that vehicles actually owned by Cunningham and operated by him were the property of Golden Light and were accordingly exempt from the provisions of Article 911b, under the 1941 amendments to the Act, Article 911b, Secs. 1a and 1b. Among the exemptions set forth is one which relates to a person who as an incident to the operation of his business, transports goods, wares and merchandise of which he is the bona fide owner.

The Legislative declaration of policy contained in the Act places emphasis upon public safety as well as upon physical protection for the highways of the state and economic and discriminatory practices within the trucking industry. Article 911b, Sec. 22b reads as follows:

"Declaration of Policy. The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be ren-

dered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that public highways may serve the best interest of the general public."

1   The agrement between Golden Light and Cunningham under which Cunningham's operations assumed the guise and appearance of being those of Golden Light constituted an actionable conspiracy which has been defined as "a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." When a conspiracy is proven, each of the parties thereto "is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination." State of Texas v. Standard Oil Company, 130 Texas 313, 107 S.W. 2d 550, 559. If Barham, an admitted agent of Cunningham, while engaged in the furtherance of the unlawful conspiracy to evade and circumvent the motor carrier laws of this state, was guilty of negligence proximately causing the deaths and injuries complained of, then liability therefor is attributable to Golden Light along with its co-conspirator, Cunningham. Numerous provisions of the Motor Carrier Act are patently designed for protection of the public, such as the requirement for indemnity insurance, Railroad Commission approval of equipment and the like (Art. 911b, Secs. 13, 13a). It visits no injustice upon a party seeking to circumvent the Act, to hold him to the responsibility attendant upon his assumed or purported legal position. For the purpose of securing the transportation of its coffee from Houston to Amarillo, Golden Light in effect represented that it was transporting its own goods, wares and merchandise. After a collision and injury has resulted because of such transportation activities, no reason is apparent for not taking the company at its word and settling upon it the liabilities of its assumed position.

The refusal to follow the established conspiracy doctrine in a case like this could lead to nothing but the multiplication of fraudulent devices in order to allow a business organization to operate in an irresponsible fashion through undisclosed contract carriers having no indemnity insurance, permits or assets.

2   Judging from the authorities cited, the Court of Civil Ap-

peals was of the opinion that there was no casual connection between the damages sustained by petitioners and the unlawful agreement entered into between Golden Light and Cunningham.

Some additional statement is necessary. As above pointed out, the motion for summary judgment was, in large part, based upon the depositions of Donnell and Cunningham. Certain details of operation under the plan evolved by them appear therefrom. A GMC truck was purchased in the name of Golden Light. Advertising signs or labels were painted on the truck indicating that the truck was owned and operated by Golden Light Coffee Company. Liability insurance on this truck was carried by Golden Light and the drivers thereof were instructed to and upon occasion did inform law enforcement officials that the truck belonged to Golden Light and that they were employees of Golden Light. The coffee company paid all traffiic violation fines levied against the drivers of this truck. To all public regulatory bodies and officers, that is the Railroad Commission, the State Highway Commission, the Department of Public Safety and other law enforcement agencies, this GMC truck was the property of and was being operated by Golden Light. Yet these same depositions show that as between Golden Light and Cunningham the latter was the owner of the truck and was an independent contractor hauling Golden Light's coffee from Houston to Amarillo for 51 cents per cwt. Had the collision occurred while Barnham, as Cunningham's employee, was driving the GMC truck there can be little doubt as to the Golden Light's liability. See the Missouri Scott Milling Company cases, e.g., Wooldridge v. Scott County Milling Co., Mo. App., 102 S.W. 2d 958; Kneezle v. Scott County Milling Co., Mo. App., 113 S.W. 2d 817; Jackson v. Scott County Milling Co., Mo. Ap., 118 S.W. 2d 1054.

**3** It further seems well settled that one holding a certificate or permit authorizing him to operate a motor carrier over the highways of the State may not delegate to another the rights conferred by such certificate or permit and then release himself from liability to those injured by the negligence of the wrongfully delegated party. Emerson v. Park, Texas Civ. App., 84 S.W. 2d 1100, wr. dis.; Wardlow v. Newberry, Texas Civ. App., 319 S.W. 2d 437, no writ history, and authorities therein cited. It seems that the same principle would apply to one having a statutory exemption to handle his own goods, wares and merchandise, who attempts to transfer that exemption, in a manner speaking, so as to cloak the illegal operations of a contract carrier.

However, the truck which was involved in the collision was not the GMC truck, but a Chevrolet truck owned by Cunningham which had been substituted temporarily for the GMC truck which had broken down and was being repaired. Because of this circumstance the Court of Civil Appeals considered the case as being analogous to one in which a dealer had allowed another to drive an automobile equipped with dealer license plates with the result that the car was used for a purpose not permitted under the law providing for dealers' licenses, Worsham Buick Co. v. Isaacs, 121 Texas 587, 51 S.W. 2d 277, 86 A.L.R. 232, or as being controlled by Linden Lumber Company v. Johnston, Texas Civ. App., 128 S.W. 2d 121, wherein it appeared that the lumber company had contracted with Morse to haul lumber when Morse did not have a proper permit from the Railroad Commission. Neither cited case was a conspiracy case. In the Linden Lumber Company case there was no showing that the lumber company knew that Morse did not posess a proper permit or conspired with him to circumvent the statute.

Similarly in McCombs v. Stewart, Texas Civ. App., 117 S.W. 2d 869, no writ history, cited in respondent's brief, the court specifically said that "There is no evidence of a specific contract or understanding that the load should be excessive," that is, above the weight limit set by law for motor carriers. 117 S.W. 2d 872. The only way the present case can be considered as coming within the rule of the cases mentioned is to eliminate the conspiracy theory altogether by construing the unlawful agreement between Golden Light and Cunningham as having reference to the GMC truck *only* and then saying that Barham, in driving the Chevrolet truck, was not acting in furtherance of the conspiracy.

The depositions do not support this narrow construction. We are not here concerned with a sporadic operation, but with a plan which had been in use for more than four years. The agreement between Golden Light and Cunningham was one to transport coffee from Houston to Amarillo in violation of the Motor Carrier Act. This constituted the actionable conspiracy. In pursuance thereof the contracting parties intended to make it appear that Golden Light and not Cunningham was the transportation operator. The GMC truck may have been the primary means for carrying out the purpose of the conspiracy but it was not the exclusive means. Cunningham's deposition discloses that when the GMC truck broke down or was unavailable, he substituted one of his Chevrolet trucks to haul Golden Light's coffee. The only distinction between the GMC and the Chevrolet was that the

Chevrolet was not as suitable a device for effecting the intended deception as was the GMC truck with its Golden ·Light labels and false registry.

In the Missouri case of Kneezle v. Scott County Milling Co., Mo. App., 113 S.W. 2d 817, the defendants Wade and Scott County Milling Company occupied positions similar to those of Cunningham and Golden Light in the present litigation. What was said by the Missouri Court has application here, viz:

"It is well settled law in this state that all the parties to a conspiracy are responsible for the acts of one in carrying out the conspiracy. The conspiracy in this case, as appears from the evidence, was to operate a truck to haul defendant's products over the highways of this state in violation of the statutes. The accident occurred while defendant Wade was engaged in the unlawful hauling of the products of the defendant Scott County Milling Company, and while carrying out the purpose of the conspiracy to unlawfully transport such products. It necessarily follows, as we view the law, that such facts create liability against the Scott County Milling Company, as well as against the personal defendants."

The lower courts erred in holding that there were no genuine issues of fact between petitioners on one hand and the respondent, Golden Light Coffee Company on the other. The judgments of the District Court and the Court of Civil Appeals are accordingly reversed and this cause is remanded to the District Court for new trial.

Opinion delivered July 15, 1959.

Rehearing overruled October 7, 1959.