### GREAT NATIONAL LIFE INSURANCE COMPANY, Appellant,

v.

### Jesus G. CHAPA, Appellee.

### No. 4188.

Court of Civil Appeals of Texas.

Waco.

Nov. 14, 1963.

Rehearing Denied Dec. 12, 1963.

Jones, Boyd, Westbrook & Lovelace, Waco, for appellant.

Carl Chase, Corpus Christi, Sam Lanham, Waco, for appellee.

McDONALD, Chief Justice.

This is an appeal from an order of the District Court of McLennan County, over-ruling defendant's plea of privilege to be sued in Dallas County. The suit arose from an automobile accident in which plaintiff was run over by David Castillo, a life insurance salesman, alleged to be a co-conspirator with defendant Insurance Company, in order to impute the negligence of the salesman to the defendant Insurance Company.

Plaintiff brought suit in McLennan County, alleging that defendant Castillo, on April 1, 1961, negligently drove his automobile into plaintiff, causing severe injury to his body. Plaintiff alleged that at the time of the accident defendant Castillo was performing duties for defendant Insurance Company, in direct violation of Article 21.07–1 of the Insurance Code, V.A.T.S.; that defendants in effect had contracted with one another, whereby defendant Castillo would sell insurance for defendant Insurance Company prior to the time Castillo had a valid license; that such constituted an actionable conspiracy whereby both defendants became co-conspirators, and as such are joint tort feasors, and both liable for the negligence of defendant Castillo.

Defendant Insurance Company filed its plea of privilege to be sued in Dallas County.

Trial was before the court without a jury, which, after hearing, overruled defendant Insurance Company's plea of privilege. Defendant Insurance Company appeals, contending the Trial Court erred in overruling its plea of privilege, there being no evidence to support the Trial Court's findings of the existence of a conspiracy between defendant Insurance Company and defendant Castillo on April 1, 1961.

It is undisputed that defendant Castillo ran over plaintiff with his automobile on April 1, 1961 and caused serious bodily injury to plaintiff. It is stipulated that there is sufficient evidence to sustain the Trial Court's finding that defendant Castillo was guilty of negligence, proximately causing plaintiff's injury. There is ample evidence

that defendant Castillo was engaged in the furtherance of his contractual duties to sell insurance at the time of the accident. (He was following the automobile of Gene Davis to a location where they had previously agreed to continue negotiation concerning purchase of a life insurance policy by Davis).

■ A life insurance salesman or agent (if he is licensed to sell insurance), is not such an agent that his negligence in driving his personal automobile to achieve the results contemplated by his contract, would be imputed to the Insurance Company principal. Sartain v. Southern Nat. Life Ins. Co., C.C.A. (n. r. e.) 364 S.W.2d 245; American Nat. Ins. Co. v. Denke, 128 Tex. 229, 95 S.W.2d 370, 107 A.L.R. 409; Kennedy v. American Nat. Ins. Co., 130 Tex. 155, 107 S.W.2d 364, 111 A.L.R. 916.

Article 21.07 of the Insurance Code *prohibits one from acting as an agent for an insurance company, without a license.* Such article further provides that a temporary license may be issued for 90 days, and that if such temporary license is not secured from the Commissioner (of Insurance) within 7 days from the date the application was sent to the Commissioner, the Company may assume that the temporary license will be issued in due course, and the applicant may proceed to act as an agent.

■ On March 23, 1961 defendant Castillo entered into written contracts with defendant Insurance Company. Such contracts provided, among other things, that "Every new salesman is expected to have at least 1 sale during the first 2 weeks under contract."

On March 31, 1961 defendant Company mailed application for a license for defendant Castillo to the Insurance Commissioner. On April 1, 1961 Castillo was engaged in acting as an agent for defendant Insurance Company at the very time of running over plaintiff. Under the statute, 7 days from March 31, 1961, or April 7, 1961 was the earliest date that Castillo could act as agent

for defendant Company. Yet he contracted with defendant Company to make a sale for it within 2 weeks from March 23, 1961, and was in fact carrying out such contract on April 1, 1961, when he ran over plaintiff. On April 1, 1961, Castillo had no license, and was not authorized to act as agent.

The record before us further reflects that defendant Insurance Company had paid defendant Castillo remuneration, directed him to sell or solicit insurance within 2 weeks of March 23, 1961, and accepted 12 policy applications during the first 2 weeks of employment, all with the full knowledge and consent of both defendants that Castillo was unlicensed.

We think the violations of the Insurance Code pursuant to defendants' contract with each other falls directly within the definition of "an actionable civil conspiracy is a combination by one or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means". 12 Tex.Jur.2d, 336.

Defendant Castillo and the disinterested witness Davis both testified that at the time of the running over of plaintiff by Castillo, Castillo and Davis were enroute to negotiate the purchase of insurance by Davis.

Our Supreme Court in Berry v. Golden Light Coffee Company, 160 Tex. 128, 327 S.W.2d 436, holds that "When a conspiracy is proven, each of the parties thereto 'is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination.'" Such case further holds that there need not be causal connection between the damages sustained by plaintiff and the unlawful agreement entered into by defendants. When the unlawful agreement was entered into, the parties thereto are parties to a conspiracy, and are each responsible for the acts of the other in carrying out the conspiracy.

In the case at bar defendants entered into an unlawful agreement—as a result of which conspiracy defendant Castillo was on the highway furthering his co-conspira-

tor's business at the very moment of the accident, and the co-conspirator, defendant Insurance Company, is jointly liable for the damages of plaintiff.

We think there is ample evidence to support the Trial Court's finding of the existence of a conspiracy between the defendants.

The venue in a civil suit for conspiracy may be laid in any county in which an act in pursuance of the common design was performed by any one of the conspirators. 12 Tex.Jur. p. 339.

Defendant's points and contentions are overruled, and the judgment of the Trial Court is affirmed.

WILSON, Justice (dissenting).

If it is assumed that the evidence supports the implied finding that an actionable conspiracy existed—a question of some doubt—there is no vicarious liability of appellant, in my opinion, for the independent, incidental, and collateral tort of Castillo.

The decision here is bottomed on Berry v. Golden Light Coffee Company, 160 Tex. 128, 327 S.W.2d 436. In that case the Railroad Commission permit to transport commodities on a State highway constituted a non-delegable right. The legislative policy declaration emphasized public safety on the highways, the Motor Carrier Act being "for protection of the public." The Court held there was no reason "for not taking the company at its word and settling upon it the liabilities of its assumed position", and holding it to its purported legal status. The liability arose from use of the very "primary" device and instrumentality agreed upon in furthering the very unlawful act conspired to be done, in the very manner the conspirators planned: the use of the highway by a motor vehicle to transport the commodities of another under the guise the carrier was the bona fide owner. The tort was committed directly in furtherance of the conspiracy in the unlawful use of the instrumentality contemplated. The holding was not intended to cover an area as broad as the present case.

Tort liability arising from conspiracy is of modern origin. It did not exist at early common law. VIII Holdsworth, History of English Law 392. Without creating a boundary, in this State it has traditionally been limited to cases where the objective was directed toward harming the injured party. Delz v. Winfree (1891), 80 Tex. 400, 16 S.W. 111, 26 Am.St.Rep. 755; Jernigan v. Wainer, (1854), 12 Tex. 189. See 38 Tex.L.Rev. 655, 657. The distinction between collateral acts and those directly in furtherance of the alleged conspiracy was drawn at an early date by Chief Justice Gaines in Blum v. Jones (1894), 86 Tex. 492, 25 S.W. 694, 696, where in an alleged conspiracy to satisfy indebtedness by goods purchased on credit it was said that insurance of the property was not "an act done in furtherance of the alleged concerted design."

In the present case the impropriety of the holding may be seen by varying the facts, but not the principle. If Castillo had been walking, rather than driving, to the agreed meeting place, and enroute had negligently broken a store window, or injured another pedestrian by brushing him on the sidewalk, there would be no suggestion of liability on appellant's part. If Castillo had been riding as a passenger on a public conveyance, on his way to sell insurance, and had negligently stepped on a fellow-passenger's foot, I doubt that imposition of liability on appellant would be proposed. The conduct of the tort-feasor would then be said to be incidental and collateral; not in furtherance of the alleged conspiracy. Such extreme illustrations are more than mere reductio ad absurdem; they illustrate the extent to which the majority holding would affect our jurisprudence. I think the holding goes too far in imputing liability. I would reverse.