Billy J. **TERRELL** et al., Appellants,

v.

Harold **OLSEN**, Appellee.

No. 14251.

Court of Civil Appeals of Texas.

San Antonio.

April 22, 1964.

**720**

Dobbins & Howard, Richard W. Harris, San Antonio, for appellants.

Jack F. Ridgeway, Ekillis M. Chandler, San Antonio, for appellee.

BARROW, Justice.

This suit for rescission of contracts to purchase tracts of land, and to recover actual and exemplary damages for fraud and conspiracy, was brought by appellants, Billy J. Terrell and twenty-six other individuals, against Billy Thomas and appellee, Harold Olsen. At the conclusion of appellants' case, the trial court granted Olsen an instructed verdict and rendered judgment for appellants against Thomas for $6,795.00 actual and $13,590.00 exemplary damages. Appellants have perfected this appeal from the take-nothing judgment rendered on their claim against Olsen.

Appellants assert, by their first four points, the basic proposition that they established a prima facie case of conspiracy between Thomas and Olsen and the trial court erred in holding as a matter of law that no conspiracy existed. It is fundamental that in passing upon this proposition, we must view and interpret the evidence in its most favorable light to appellants, disregarding all evidence and the inferences therefrom favorable to appellee. Ford v. Panhandle and S. F. Ry. Co., 151 Tex. 538, 252 S.W.2d 561; Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696.

This suit arose out of the sale to appellants by Thomas of small tracts of land located in an area designated by Thomas as Forrest Hills residential subdivision, although there was no recorded plat of a subdivision. The purported subdivision comprised a 96-acre tract of land in Bexar County, conveyed to Thomas by Olsen on November 11, 1959. These ninety-six acres were out of a 254-acre tract purchased by Lou Hoke from George and Lloyd Wright in 1956, out of a 965-acre tract owned by the Wrights. The Wrights had burdened the entire 965-acre tract with three leases of 2.4-acre sites to three powder companies for storage of dynamite. These leases were executed on November 14, 1951, December 1, 1951, and March 1, 1952, respectively, and each was for a primary term of ten years, with a year-to-year option for an additional period of five years, and among other covenants, provided: "That no dwelling for human habitation will be erected on lessor's

property within 1500' (1700' on one lease) of lessee's magazines." These leases were duly recorded in the Deed Records of Bexar County.

For many years prior to the present controversy Olsen operated a radio and television parts shop in San Antonio. He had never taken part in the development of a subdivision, although he did buy and sell rural real estate. When Lou Hoke bought the 254-acre tract from the Wrights, Olsen loaned her the money and was given a deed of trust to secure the loan. Olsen acquired this tract by foreclosure in July, 1957. It is located about nine miles south of San Antonio on U. S. Highway No. 281, and the only improvement on this blackjack pasture land at the time of his acquisition was a tank constructed by Lou Hoke. In 1958 the A. E. M. Corporation, which was owned by Jake Elliott, was developing a subdivision on the adjoining tract.

Elliott was contacted by a real estate friend of Olsen in regard to the purchase of Olsen's land. Elliott did not want the land within the dynamite restriction, and, after a survey, purchased 158 acres of the 254-acre tract. The remaining 96 acres are all substantially within the specified distances of 1500' or 1700' from the aluminum huts, 9' x 12' and 14' high, in which the dynamite is stored, and therefore within the restriction. After this purchase in March, 1958, Elliott subdivided the 158 acres for sale as homesites.

Thomas worked for Elliott as a commission salesman on this subdivision, and in December, 1958, he contacted Olsen in regard to purchasing the remaining 96 acres at the same price ($160.00 per acre) as Elliott paid for the 158 acres. Olsen re-offered the 96 acres to Elliott, who declined because of the dynamite restriction. On December 11, 1958, Olsen and Thomas entered into an earnest money contract for purchase by Thomas of this 96 acres for $500.00 down and a note for the balance. A dispute arose over Thomas' right to use a road across Elliott's 158 acres, and the title

company refused to issue a guaranty title as called for in the earnest money contract. On April 7, 1959, Thomas sued Olsen for $50,000 damages for failure to furnish ingress and egress to the 96-acre tract. The suit was subsequently settled by return of the $500 down payment, and on November 11, 1959, Olsen conveyed the 96-acre tract to Thomas by special warranty deed, subject to any mineral lease and/or easements of record. This deed was duly recorded on November 13, 1959. A note in the sum of $14,525.15, payable $150.00 per month, and secured by a deed of trust, was given as consideration for the purchase by Thomas.

Shortly thereafter Thomas cut a few streets in the tract, staked it off into lots, and commenced advertising and promoting the sale of the land as a "wooded subdivision." Each of the appellants paid all or part of the purchase price of a lot, although none of them secured a deed from Thomas. These sales took place during April and May of 1960, and also near the end of that year. In December, 1960, Thomas abandoned the project and his whereabouts and resources were unknown at the time of the trial. There was evidence of many false representations to appellants by Thomas as to the suitability of the lots as homesites, the availability of all utilities, and the proposed construction of a recreational area. None of the appellants were informed of the restriction contained in the dynamite leases.

Appellants do not assert that any of these false representations were made by Olsen, or even in his presence. They allege that Olsen fraudulently, willfully and maliciously conspired with Thomas to sell the land at a price far in excess of its true value by subdividing and selling the lots as residential property. It was further alleged that Olsen conspired in concealing the dynamite restriction and the close proximity of the magazine storage sites to the tract. That in furtherance of this conspiracy, Olsen conveyed the land to Thomas, but retained the equitable title in the form of a vendor's lien.

An actionable civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Great National Life Ins. Co. v. Chapa, 377 S.W.2d 632 (Tex.1964); International Bankers Life Ins. Co. v. Holloway, Tex., 368 S.W.2d 567. In the Holloway case, the Supreme Court recognized the difficulty a party has in securing evidence of a conspiracy. It was there said:

"The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators."

The Court cited with approval Jernigan v. Wainer, 12 Tex. 189, as follows:

"When men enter into conspiracies, they are not likely to call in a witness * * *. In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses." See also: Berry v. Golden Light Coffee Co., 160 Tex. 128, 327 S.W.2d 436; State v. Standard Oil Co., 130 Tex. 313, 107 S. W.2d 550.

It is well settled, however, that the difficulty in proving acts of conspiracy will not supplant the necessity for evidence, and appellants were therefore required to show a conspiracy by evidence of more than a scintilla. International Bankers Life Ins. Co. v. Holloway, supra; Frankfurt v. Wilson, Tex.Civ.App., 353 S.W.2d 490; City of Corpus Christi v. Gregg, Tex.Civ. App., 275 S.W.2d 547, rev. on other grounds, 155 Tex. 537, 289 S.W.2d 746; Gager v. Reeves, Tex.Civ.App., 235 S.W.2d 688;

Kenyon v. Bender, Tex.Civ.App., 174 S.W. 2d 110.

It is our opinion, from an examination of this record in the light of the above rules, that appellants failed to establish a prima facie case of a conspiracy between Thomas and Olsen. The most that can be said is that the jury could infer from the testimony of Elliott that Olsen knew that Thomas would subdivide the 96-acre tract. However, there is no connection between Olsen and the fraudulent representations made by Thomas to appellants. Olsen was never on the property from the time of the purchase by Thomas until May, 1963. The land was suitable for subdivision into tracts of an acre or more for use other than as a homesite until the dynamite restriction terminated. In fact, appellant Terrell testified that the property was a good buy and that he endeavored to obtain a deed from Thomas after he had learned of the dynamite restriction. The dynamite leases were all of record and the magazine storage huts were plainly visible.

The record shows only a grantor-grantee relationship between Olsen and Thomas. Regular books of account kept by Olsen reflect such a relationship. The special warranty deed was made expressly subject to the easements of record and was promptly recorded. Thomas sued Olsen over the terms of the earnest money contract for purchase of the tract. On May 17, 1960, Olsen's attorney made a written demand for payment of the delinquent monthly payments and required payment of $300.00 by Thomas within a week to avoid foreclosure. Olsen made the same contract with Thomas and Elliott relative to partial release of an acre or more from his vendor's lien, upon payment of $200.00 per acre in addition to the regular monthly payments. The uncontradicted testimony showed that this was the customary provision in this type of purchase.

There is no evidence beyond a scintilla, conjecture or surmise to establish a conspiracy between Thomas and Olsen to

defraud appellants. The trial court, therefore, properly struck as hearsay the acts and statement of Thomas outside the presence of Olsen. 12 Tex.Jur. § 21; Reliance Ins. Co. v. Smith, Tex.Com.App., 66 S.W.2d 675; North River Ins. Co. of New York v. Daniel, Tex.Civ.App., 101 S.W.2d 401; Vittitoe v. Junkin, Tex.Civ.App., 54 S.W. 2d 166.

The judgment is affirmed.