STATE of Texas, Appellant,

v.

WOODVILLE LUMBER COMPANY, INC., et al., Appellees.

No. 8041.

Court of Civil Appeals of Texas, Beaumont.

Oct. 20, 1977.

Rehearing Denied Nov. 10, 1977.

was designed simply to mask the true relationship of the parties. The Appellees on the other hand, contend that these transportation movements were 'private carriage' by Woodville Lumber Company and that the contractual arrangement between the Company and Joe P. Screws was an 'incentive plan' designed by the parties as a means of compensating Joe P. Screws as an employee of Woodville Lumber Company."

Marvin F. Sentell, John L. Hill, Atty. Gen., Austin, for appellant.

John H. Seale, Jasper, for appellees.

KEITH, Justice.

The State appeals from an adverse judgment rendered after a bench trial wherein it sought a permanent injunction and penalties for the alleged violation by the defendants of Tex.Rev.Civ.Stat.Ann. art. 911b, § 16(b)–(c) (Supp.1977), commonly known as the Texas Motor Carrier Act.

The State alleged that upon sixty separate days the defendant Screws acted as a "motor carrier" in transporting lumber and lumber by-products from the manufacturing plant of Woodville Lumber Company, in Tyler County, to various cities in Texas for compensation or hire as a "contract carrier" in violation of the provisions of the Act.[1]

It was agreed between the parties that the goods were transported over the highways upon the several dates alleged by the State and that neither of the defendants was licensed under the terms of the Act to act as a contract carrier. State's counsel states the question presented by this appeal in this manner:

"The issue between the parties is the interpretation to be given to the contractual agreement between Woodville Lumber Company and Joe P. Screws. Appellant contends that Joe P. Screws was performing a contract carrier service for hire for Woodville Lumber Company and that the *form* chosen by these Appellees

Upon the trial, it was established that before 1971 or 1972, the lumber company engaged the services of a licensed contract carrier in the delivery of its lumber and lumber by-products throughout Texas. A disagreement arose between the lumber company and the contract carrier and an arrangement was worked out between Screws and the company whereby Screws would provide such services to the company. The State has contended throughout the litigation that the agreement · between Screws and the lumber company was but a subterfuge to avoid the effect of the Act.

However, there was testimony to the effect that the company purchased the trucks, carried the drivers upon its payroll, paid the workmen's compensation premiums upon such drivers, and carried public liability insurance upon the trucks which bore the legend of ownership thereon. The company contended that its dealing with Screws, which the State relies upon to show the subterfuge, was simply a profit incentive plan whereby Screws would receive a portion of the savings from the cartage of the lumber for his efforts in supervising such operation.

We concede that the evidence before the court would have supported a judgment for the State for the penalties but, after considering the testimony, the trial court filed its findings of fact and conclusions of law which were adverse to the State's contentions. The court's findings tracked the language of the statute from which the court

---

1. The statute defines a "motor carrier" in § 1(g) [Supp.1977], while a "contract carrier" is defined in § 1(h) of the Act [1964].

concluded that there was not a violation of the Act.[2]

In *Gandy v. Culpepper*, 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ), we had occasion to collate the authorities with reference to the effect to be given to findings of fact and conclusions of law in a non-jury trial when an examination of the statement of facts showed such findings to be supported by competent evidence of probative value. We apply this rule in the case at bar.[3]

But, the State contends that it sought additional findings and conclusions of law which were refused by the trial court and it has sought to protect the record by a formal bill of exception. The demand for the additional findings was made twelve days after the filing of the original findings of fact. A request for additional findings must be made within five days after the filing of the original findings. See Tex.R. Civ.P. 298 and the authorities cited in *Vanity Fair Properties v. Billingsley*, 469 S.W.2d 453, 455 (Tex.Civ.App.—San Antonio 1971, writ ref'd n. r. e.). See also *Elrod v. Elrod*, 517 S.W.2d 669, 675 (Tex.Civ.App.—Corpus Christi 1974, no writ). In this case, counsel did not seek an extension of time within which to file the request for the additional findings under Tex.R.Civ.P. 5(b). No error being shown, point three complaining of the failure to file additional findings is overruled.

State's counsel has filed a scholarly brief supporting the thesis that the activities of the defendants were in violation of the cited statute. Most of the pertinent authorities are discussed in detail, and we have given careful consideration to the argument and supporting authorities. However, our problem is factual—not legal.

State's counsel places much emphasis—in the brief and upon oral argument—upon *Reavley v. State*, 124 Tex.Cr.R. 528, 63 S.W.2d 709 (1933), and *Berry v. Golden Light Coffee Company*, 160 Tex. 128, 327 S.W.2d 436 (1959). We find that while there is language in each opinion favorable to the State's position, neither is controlling in the case at bar. In *Reavley*, the appeal was from a final conviction of a misdemeanor; and, obviously, the trial judge had accepted the State's version of the facts as being true. *Berry* was an appeal from a summary judgment and only deposition testimony was considered in the trial court; and, as noted by Justice Norvell, the depositions must be construed "in the light most favorable to petitioners."

In the case under review, the trial court did not accept the State's version of the facts, but found against the State on a factual basis. Under the line of authorities discussed in *Gandy v. Culpepper*, supra, this finding is controlling upon appeal. After reviewing the facts under the applicable standards [see, e. g., *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965)], we find no error.

The judgment of the trial court is affirmed.

AFFIRMED.

---

**2.** The court made these findings:

(1) "At all times mentioned in plaintiff's pleadings, Woodville Lumber Co. had a regular, separate, fixed, and established place of business, other than a transportation business, where goods, wares and merchandise are kept in stock and where lumber and lumber by-products are manufactured in the ordinary course of the manufacturing business."

(2) "Merely incidental to the operation of such business, Woodville Lumber Co. transported such goods over the highways of this state, at the times mentioned in plaintiff's pleadings and at all such times, Woodville Lumber Company was the bona fide owner of such goods and transported same by means of motor vehicles of which Woodville Lumber Co. was the bona fide owner."

**3.** We do not approve of findings which consist of pure factual and legal conclusions, as was done in the case at bar. Such a procedure thwarts the purpose of the rule requiring findings and is of little assistance in an appellate court. But, no complaint is made of this procedure on this appeal.

We suggest that trial courts should follow the procedure outlined in 4 McDonald, Texas Civil Practice, § 16.05, p. 10, fn. 29 (1971 Rev. Vol.), wherein the author discusses the rule prevailing in the federal practice.