TIMMERS CHEVROLET, INC. and Harvey E. Lively, Appellants,

v.

Orel CARROLL, Appellee.

No. 8197.

Court of Civil Appeals of Texas, Beaumont.

Feb. 22, 1979.

Rehearing Denied April 5, 1979.

**474**

J. W. Patten, Arthur M. Glover, Jr., Iris Hefter Robinson, Lorance, Thompson, & Wittig, Houston, for appellants.

Henry P. Giessel, Houston, Leo Freedman, Pasadena, for appellee.

CLAYTON, Justice.

This is a personal injury suit arising out of an automobile-wrecker truck collision which occurred in Pasadena, Texas. Plaintiff sued John Morris Crum, Jerry McCoy, individually and d/b/a Harvey's Wrecker Service and also d/b/a Timmers Wrecker Company, Timmers Chevrolet, Inc., and Harvey E. Lively, individually and d/b/a Harvey's Wrecker Service, for personal injuries he received when the automobile he was driving was struck by the wrecker driven by defendant Crum. Defendant Lively was the owner of the wrecker and the holder of the emergency wrecker permit issued by the City of Pasadena. Defendant McCoy had leased the wrecker from defendant Lively. "Timmers Chevrolet" was painted upon the sides and front of the wrecker.

The jury, in response to special issues, found that the plaintiff was 15 percent negligent and defendant Crum was 85 percent negligent, that defendants Timmers Chevrolet, McCoy, and Lively were, at the time of the collision in question, "engaged in a civil conspiracy . . . to evade the auto wrecker permit Laws of the City of Pasadena." Based upon the verdict, the trial court entered judgment against all named defendants, jointly and severally, in the sum of $692,750. Defendants Timmers Chevrolet, Inc., and Harvey E. Lively have perfected their appeal from such judgment. The other named defendants have not appealed.

Both appellants urge "no evidence points" as to the findings of the jury on the question of conspiracy. The issue submitted to the jury inquired, "Do you find . . . that Jerry McCoy, Harvey Lively, and Timmers Chevrolet, Inc., were engaged in a civil conspiracy, at the time of the collision in question, to evade the auto wrecker permit Laws of the City of Pasadena?" In response thereto the jury answered, "Yes." The primary question before this court is whether or not there is any evidence of probative force to support the jury findings as to the existence of a conspiracy.

■ In deciding a "no evidence" question, we must consider only the evidence and the inferences tending to support the findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Lucas v. Hartford Accident and Indemnity Co.*, 552 S.W.2d 796, 797 (Tex.1977); *Fisher Construction Co. v. Riggs*, 160 Tex. 23, 325 S.W.2d 126, 127 (1959).

The parties apparently are not in dispute as to the relevant facts with reference to the question of a conspiracy. Lively operated a wrecker service, and Timmers Chevrolet operated an automobile dealership with a service department operating for the purposes of repairing automobiles. There was an agreement between Timmers and Lively under which Timmers, upon receiving a call from a member of the public concerning that person's disabled vehicle, would relay that call, by way of a central dispatch system, to Harvey's Wrecker Service. Harvey's Wrecker Service, if a wrecker was available, would then proceed to pick up the disabled vehicle. If Harvey's Wrecker Service was unable to answer the call, Timmers was free to use other wrecker services. In addition, Timmers was allowed to advertise by painting its name on the sides and front of the wrecker trucks. However, Timmers was not the only customer of Harvey's Wrecker Service. The record shows that not only did Harvey's Wrecker Service receive calls for service from individuals but also had agreements with other business establishments to provide wrecker services, e. g., Pasadena Datsun, Pasadena Automotive, and Jay Marks Chevrolet.

On the day of the accident, defendant Crum was driving the wrecker to pick up a vehicle belonging to a Mr. George. George's vehicle was disabled, and he had contacted Pasadena Datsun, not Timmers, to get a wrecker in order to transport his vehicle. Pasadena Datsun gave George the name of Harvey's Wrecker to contact. George contacted Harvey's Wrecker, and the wrecker, driven by Crum, while on its way to pick up George's vehicle, was involved in the collision made the basis of this suit.

Subsequent to the agreement by and between Lively and Timmers, Lively leased Harvey's Wrecker Service, including the wrecker permits issued to Harvey's Wrecker Service or Lively by the City, to McCoy. Timmers Chevrolet was not a party to this transaction. The evidence indicates that this lease arrangement was used because the wrecker permits in the name of Lively or the wrecker service could not be transferred. A review of the record indicates that only two agreements were in existence between the parties; i. e., the lease by Lively to McCoy and the agreement between Timmers Chevrolet and Lively.

■ To decide Timmers Chevrolet's liability to plaintiff, in view of the question raised on this appeal, we must determine if Timmers Chevrolet was engaged in a civil conspiracy with the other named defendants; i. e., Lively and McCoy. Actionable conspiracy has been defined as "a combination of two or more persons . . . to accomplish . . . a lawful purpose by unlawful means." When a conspiracy is proven each of the parties thereto is responsible for all the acts done by any of the conspirators in furtherance of the unlawful combination. See *Berry v. Golden Light Coffee Company*, 160 Tex. 128, 327 S.W.2d 436 (1959). It is plaintiff's contention that the three named defendants—Timmers Chevrolet, Lively, and McCoy—conspired to evade the provisions of the City's ordinance requiring permits for the operation of a wrecker upon the streets of the City.

The ordinance of the City of Pasadena, with reference to obtaining permits for wreckers, provides that an "owner" of a wrecker must obtain a permit for the same before the wrecker can be operated upon the streets of the City. The ordinance further provides:

"*Owner.* The term 'owner' shall be construed to mean any person engaged in the business of towing motor vehicles for hire or engaged in the business of storing, wrecking or repairing motor vehicles for hire and who owns or is entitled to use

any auto wrecker, or emergency auto wrecker, and who uses same in the conduct of his business or any part thereof."

It is undisputed that Lively owned the wrecker involved in this accident in that he had legal title thereto. It is further undisputed that he had leased his business and his wrecker to McCoy. Permits had been issued to Lively for each of the wreckers owned by him and leased to McCoy.

■ The only conspiracy in which Timmers could be involved would be, by agreement with Lively, an attempt to create a relationship with Lively so that Timmers would not be required to comply with the City's ordinance in obtaining a permit. We hold that, under the facts of this case, Timmers was not required to obtain a permit for the wrecker involved in this accident. Timmers was not a company "who owns or is entitled to use any auto wrecker . . . and who uses the same in the conduct of his business or any part thereof." Timmers was not the owner and did not have legal title to the wrecker. Timmers was not contractually entitled to use any particular wrecker and certainly not the one involved in this accident. This particular wrecker was being used for the benefit of another company which had no dealings or relationship with Timmers. Timmers was only given service if and when a wrecker was available and then only to a wrecker which was available and not to any particular wrecker. The agreement between Timmers and Lively, as outlined above, was that Timmers could relay its calls for wrecker service to Lively. Lively would, in return, deliver disabled automobiles to Timmers unless the customer or owner of the vehicle desired that it be taken to another place. Timmers did not have the right of control over the wrecker, did not employ the drivers, and in fact did not even have the right to receive all the vehicles served by the wrecker. If Timmers relayed a call for a wrecker, and a wrecker was not available, Timmers could not, and did not, even have the right to the wrecker service for any reason. At the time of the accident in this case, Timmers had absolutely nothing to do with the wrecker. The wrecker involved was actually serving a call received from another company.

Timmers was not entitled to use the wrecker in this case, or any other wreckers operated by McCoy or Lively within the meaning of that term as stated in the City ordinance. The word "use" is defined by the court in *James Stewart & Co. v. Mobley*, 282 S.W.2d 290 (Tex.Civ.App.—Dallas 1955, writ ref'd), in the following language:

> " '*Use*' is to employ for accomplishment of a purpose; to apply to one's service; to avail oneself of. See 43 Words and Phrases, p. 478, 'Use,' Subdivision, Employ. And *Southwestern Telegram & Telephone Co. v. City of Dallas*, Tex.Civ. App., 174 S.W. 636, writ ref."

Timmers, not being required to obtain a permit in its name, could not be involved in or commit a conspiracy to evade provisions of the City's permit ordinance. Timmers cannot be charged with conspiring to evade an ordinance by not obtaining a permit when the ordinance does not require it to obtain a permit in the first instance.

Plaintiff strongly relies upon *Berry v. Golden Light Coffee Company*, supra, in his contentions that a conspiracy existed between the three named defendants. In the *Berry* case the agreement entered into between the parties was for the deliberate purpose of circumventing the Texas Motor Carrier Act in falsely representing that the parties were exempt from the provisions of such Act. In holding that such agreement constituted a conspiracy, the Supreme Court states that "[n]umerous provisions of the . . . Act are patently designed for protection of the public, such as the requirement for indemnity insurance, Railroad Commission approval of equipment and the like . . . ." The conspiracy in the *Berry* case actually was an attempt to exempt the parties from complying with the Act in obtaining the required permits and prevented the vehicles from being subjected to the regulatory requirements of the Act. However, in the case at bar, there was no attempt to prevent the necessity of complying with the City ordinance. The

wrecker involved herein had a permit issued therefor in the name of Lively, who was the actual owner, and presumably the wrecker had met all the regulatory and safety requirements of the City, as to the City's rights to protect all persons in the use of its streets, that could have been protected or regulated regardless of the person or business entity to whom such permit had been issued.

The purpose of the conspiracy in the *Berry* case was to operate vehicles upon the highway without subjecting those vehicles to the regulatory provisions of the Texas Motor Carrier Act. This case does not support the plaintiff's position.

Upon a careful review of the evidence, and considering the evidence under the required standards, as stated in *Lucas v. Hartford Accident and Indemnity Co.*, supra, and *Garza v. Alviar*, supra, we find there is no evidence of probative force to support a finding that Timmers was engaged in a conspiracy. The special issue inquiring as to the existence of a conspiracy between the three named defendants necessarily required Timmers to be engaged in such conspiracy. Timmers not having been so engaged, then the affirmative answer to the special issue cannot stand.

The no evidence point as to the conspiracy issue was presented in appellants' Motion for Judgment Non Obstante Veredicto, which was overruled by the trial court. We agree with appellants that the court erred in overruling such motion, and the erroneous judgment entered by the court should be reversed and rendered.

 There is no separate jury finding that Lively and McCoy had engaged in a conspiracy. Plaintiff did not request such an issue, and such was not submitted to the trial court. The same was waived by the plaintiff. *Glens Falls Insurance Co. v. Peters*, 386 S.W.2d 529, 531 (Tex.1965); *City of Houston v. Bush*, 566 S.W.2d 33 (Tex.Civ. App.—Beaumont 1978, writ ref'd n. r. e.); *Tex.R.Civ.P. 279.*

There being no evidence of probative force to support a finding of conspiracy on the part of Timmers Chevrolet and no separate finding of a conspiracy on the part of Lively, the judgment of the trial court is reversed as to Timmers Chevrolet and Lively, and we here render judgment that plaintiff take nothing as to Timmers Chevrolet and Harvey E. Lively. The remaining portions of the judgment are unchanged.

REVERSED and RENDERED.