Adolph DOUGLAS, Appellant,

v.

LEVINGSTON SHIPBUILDING CO.
et al., Appellees.

No. 8248.

Court of Civil Appeals of Texas,
Beaumont.

April 12, 1979.

Rehearing Denied May 10, 1979.

Gregory Allen, Beaumont, for appellant.

Jim Graves, Orange, G. R. Pate, Beaumont, for appellees.

CLAYTON, Justice.

This is a wrongful discharge action brought under Tex.Rev.Civ.Stat.Ann. art. 8307c (Vernon Supp.1978) of the Worker's Compensation Law. Plaintiff below, Adolph Douglas, filed this action against Levingston Shipbuilding Company (Levingston), Pat Denby, and Denby-Drilco Foundation Drilling & Repairing, Inc., & Truck Sales (Drilco), seeking damages for his wrongful discharge from his employment with Levingston. All defendants filed motions for summary judgment which were granted by the trial court, and a take-nothing judgment was entered, from which plaintiff has perfected his appeal.

Plaintiff's cause of action against defendants alleged that he (plaintiff) had been previously employed by Drilco and, during such employment, sustained an injury to his hand. The petition further alleged that during a pre-conference hearing before an Industrial Accident Board hearing officer on August 26, 1975, Pat Denby, President of Drilco, contacted someone at Levingston and advised Levingston of plaintiff's injury and claim before the Board. At this time plaintiff was employed by Levingston, and, after receiving such information as to such injury and claim for benefits, Levingston then fired plaintiff. He alleged a conspiracy existed between Denby and Levingston to terminate plaintiff's employment with Levingston and sought damages because of such conspiracy and the resulting termination of his employment with Levingston pursuant to the provisions of Tex.Rev.Civ. Stat.Ann. art. 8307c (Vernon Supp.1978).

The deposition testimony shows that on May 28, 1975, plaintiff filed his application for employment with Levingston. In such application plaintiff was required to give the names of six of his last employers. In answer to this question he did not list Drilco, when in truth and in fact Drilco was his last employer. During the time he was employed by Drilco, plaintiff actually listed himself, in answer to this question, as being self-employed. He answered "no" to the question if he had any physical defects, disease, or disability. He answered "no" to the question: "Have you ever filed for or received compensation for an injury?" The application further states, and plaintiff agreed thereto by his signature to such application, that:

"The applicant in making application for employment understands and agrees:

(1) that any misrepresentation made by him in this application will be sufficient cause for cancellation of the application and/or for separation from Company's service if he has been employed;

... I understand that if I am employed, the first ninety days of my employment shall be probational.... I authorize investigation of all statements contained in this application. ..."

Plaintiff admits that his answers to the questions enumerated above were false, that at the time of making the application Drilco was his last employer, that he did have an injury to his hand, that he had filed a claim for worker's compensation, and that his testimony shows that he had received five or six checks from the insurance carrier for weekly benefits before actually being employed by Levingston.

The testimony further shows that as a result of the prehearing conference before the Industrial Accident Board hearing officer, Denby learned that plaintiff was working for Levingston. Denby called someone at Levingston and, according to his testimony, wanted to verify that plaintiff was working for them. Denby testified that he had kept plaintiff's job open because plaintiff "kept saying he was coming back to work, and he never did come back to work, and I needed to hire another man." Denby stated "that [plaintiff] used to work for me; and now that he's working for somebody else, I won't hold his job open."

By deposition, witness Morris (who obviously was employed in some capacity with Levingston, but the record does not show in what capacity) states that he was informed that Denby had called. Morris returned Denby's call to verify that plaintiff had sustained an injury and had received compensation payments before going to work for Levingston. Morris then consulted his supervisor, Graham, and the decision was made to terminate plaintiff's employment. The witness stated plaintiff was terminated because he had falsified his application for employment and for no other reason.

▋ The witness Graham, Industrial Relations Manager for Levingston, testified by deposition that it was the policy of the company to fire an employee who falsified his application for employment, that plaintiff was not fired because he had filed a claim for compensation, that the company had hired employees who had previous injuries, that the plaintiff was fired solely because he had falsified his application.

The witnesses Morris and Graham were interested witnesses, and their testimony was uncontradicted. If such uncontradicted evidence is from an interested witness, it cannot be considered as doing more than raising an issue of fact, unless it is clear, direct, and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Swilley v. Hughes*, 488 S.W.2d 64 (Tex.1972); *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41 (Tex.1965). In the case at bar the evidence is clear, direct, and positive that plaintiff was fired because of the false statements made in his application for employment.

The rules of law applicable to this case are clearly stated in *Swanson v. American Manufacturing Co.*, 511 S.W.2d 561 (Tex. Civ.App.—Fort Worth 1974, writ ref'd n. r. e.), as follows:

"When an employee makes false statements in his application for employment, the application is voidable at the employer's option and the employer may discharge the employee. In *Huffman v. Southern Underwriters*, 133 Tex. 354, 128 S.W.2d 4 (1939), it is stated: 'It has long been the rule in this State that misrepresentations in an application for employment do not preclude recovery for injuries.... Such fact could form the basis for the cancellation of a contract of employment....' To the same effect see *Dawson v. Texas & P. Ry. Co.*, 123 Tex. 191, 70 S.W.2d 392 (1934)."

All of plaintiff's false representations became a part of his contract of employment. He agreed that "any misrepresentation made by him in this application will be sufficient cause for cancellation of the application and/or for separation from Company's service if he has been employed...." In accepting the offer of employment from Levingston, plaintiff agreed that should he make false representations he could be terminated by Levingston. *Swanson v. American Manufacturing Co.*, supra.

Plaintiff contends that Levingston and Denby had "entered into a conspiracy to fire the plaintiff." A "civil conspiracy" is defined as " 'a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.' " *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968); *Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436 (1959). We hold that the undisputed facts and admissions in this cause clearly show that plaintiff has agreed that he could be dismissed if he had misrepresented any statement in his application. He further authorized Levingston to investigate any and all statements contained in his application. Plaintiff is estopped by his contract of employment from now taking the position that his dismissal is actionable. *Swanson v. American Manufacturing Co.*, supra.

Levingston has clearly established its right to discharge plaintiff, and plaintiff was discharged because of false statements contained in his application for employment and for no other reason. Having the right to so discharge plaintiff, it could not have wrongfully entered into a conspiracy with Denby to fire plaintiff.

Finding no error, the judgment of the trial court is affirmed.

AFFIRMED.