Orel CARROLL, Petitioner,

v.

TIMMERS CHEVROLET, INC. and Harvey E. Lively, Respondents.

No. B–8467.

Supreme Court of Texas.

Dec. 19, 1979.

Rehearing Denied Jan. 30, 1980.

Talbert, Giessel & Stone, Alice Giessel and Henry P. Giessel, Houston, Leo Freedman, Pasadena, for petitioner.

Patten, Gustafson & Hyatt, J. W. Patten, Hicks, Hirsch, Glover & Robinson, Iris Hefter Robinson and James Scott, Houston, for respondents.

McGEE, Justice.

This suit arose as a result of personal injuries suffered by Orel Carroll when the automobile he was driving was in a collision with a wrecker truck. Defendant John Morris Crum was driving the wrecker at the time of the collision. Crum's employer was defendant Jerry McCoy who had leased the wrecker from defendant Harvey E. Lively. The fourth defendant was Timmers Chevrolet, Inc. The trial court entered judgment against the four defendants jointly and severally. Lively and Timmers Chevrolet appealed, and the judgment was reversed and rendered in their favor. 582 S.W.2d 473. We reverse the judgment of the court of civil appeals as to Lively, but affirm as to Timmers Chevrolet.

The collision occurred in 1976 in Pasadena, Texas, while the wrecker was responding to a nonemergency request for towing. The wrecker was owned by Lively, who had been issued an emergency wrecker permit by the City of Pasadena. Lively had applied for the permit pursuant to a Pasadena ordinance that regulated the wrecker business by making it unlawful to operate wreckers upon the city streets without a permit.[1] Any "owner," as defined by the ordinance, was required to complete a yearly permit application.[2] Application forms

---

1. Article III, Section 7–28 of the ordinance provided:

    "(a) It shall be unlawful for any person to drive or operate or cause to be driven or operated any auto wrecker upon any public street in the city for the purpose of towing or hauling wrecked or disabled vehicles, either for hire, or as an incident to obtaining the business of storing, wrecking or repairing such wrecked or disabled vehicles, without having first obtained an auto wrecker permit from the city, duly issued to such person to operate an auto wrecker on the streets of the city under the terms and provisions of this chapter.

    "(b) The holder of an emergency auto wrecker permit issued in accord with Article III of this Chapter shall not be required to obtain an auto wrecker permit under this section."

    Pasadena, Tex., Ordinance No. 73–240.

2. Article II, Section 7–8 of the ordinance defined "owner":

    "The term 'owner' shall be construed to mean any person engaged in the business of towing motor vehicles for hire or engaged in

were provided by the city. The emergency wrecker permit forms required disclosure of such things as size and equipment of the wrecker. The identity of the "true owner," if not the applicant, was required to be disclosed, as well as the name of the company under which the wrecker was to be operated. Once issued a permit, the holder's ability to transfer it was restricted.

Prior to 1975, Harvey's Wrecker Service was operated as a sole proprietorship by Lively. Beginning in 1975, Lively leased the wrecker service, including his wreckers and permits, on a monthly basis to McCoy. McCoy had no permit for the wrecker, and neither the 1976 renewal application made by Lively nor the permit indicated that it was McCoy who was currently engaged in the wrecker service business. Carroll's theory of recovery was based in part on an alleged conspiracy between Lively and McCoy to unlawfully evade the permit ordinance.

During the time Lively had operated Harvey's Wrecker Service, he had established a business arrangement with Timmers Chevrolet, which was in the business of selling and repairing automobiles. Lively and Timmers Chevrolet had agreed that when Timmers Chevrolet received a call from someone whose vehicle needed to be towed, it would forward the call through a general dispatch service to Harvey's Wrecker Service. If one of their wreckers was available, Harvey's Wrecker Service would pick up the vehicle; if not, Timmers Chevrolet could use other wrecker services. Timmers Chevrolet advertised by having its name painted on the front and sides of the wreckers. Upon "loading a wreck," Harvey's Wrecker Service would deliver it to Timmers' service department unless directed otherwise by the customer. This arrangement continued after McCoy took over the wrecker service. Carroll predicated liability against Timmers Chevrolet on the ground that it also sought to evade the permit requirements.

the business of storing, wrecking or repairing motor vehicles for hire and who owns or is entitled to use any auto wrecker, or emergen-

Although about half the cars picked up by Harvey's Wrecker Service went to Timmers, the wrecker service also received calls from other automobile-related businesses and individuals. At the time of the collision, its wrecker had been directed to pick up a vehicle after a nonemergency request from an individual. This individual had been referred to Harvey's Wrecker Service by a local Datsun dealership, and wished to have his automobile towed to his home.

In response to special issues the jury found that Carroll was 15 percent negligent, and that Crum, the driver, was 85 percent negligent. It also found that McCoy, Lively, and Timmers Chevrolet "were engaged in a civil conspiracy, at the time of the collision in question, to evade the auto wrecker permit laws of the City of Pasadena." Additionally, Timmers Chevrolet was found to be an "owner" of the wrecker within the meaning of the ordinance. The jury failed to find, however, that the driver was in furtherance of a mission for Timmers Chevrolet or was subject to Timmers' right to control. Judgment was entered against all defendants, jointly and severally, for $692,750.

■ A civil conspiracy is generally defined as a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means. It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action. *Great National Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex.1964).

■ The concept of civil conspiracy is sometimes used by an injured plaintiff as a basis for establishing joint and several tort liability among several parties. To be distinguished from the concept of vicarious liability for concerted action, civil conspiracy "came to be used to extend liability in tort . . . beyond the active wrongdoer to those who have merely planned,

cy auto wrecker, and who uses same in the conduct of his business or any part thereof."

assisted, or encouraged his acts." W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 46, at 293 (1971). Once a conspiracy is proven, each co-conspirator "is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination." *State v. Standard Oil Co.*, 130 Tex. 313, 107 S.W.2d 550, 559 (1937).

■ In this case the wrecker driver has been found negligent; plaintiff bases liability against the appealing parties, Lively and Timmers Chevrolet, on allegations that each conspired to evade the Pasadena wrecker permit ordinance. The jury having found that McCoy, Lively, and Timmers were engaged in such a conspiracy, we must view the evidence in the light most favorable to the jury finding. We also recognize that the common purpose from which conspiracy liability arises may be established by reasonable inferences. Quoting early cases, this court stated:

> "It was early said by this Court in *Jernigan v. Wainer*, 12 Tex. 189:
>
> " 'When men enter into conspiracies, they are not likely to call in a witness . . . .. In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained. They are not likely to proclaim them in the hearing of witnesses.'
>
> "And in *Whitmore v. Allen*, 33 Tex. 355, that
>
> " 'A conspiracy may be proven as well by the acts of the conspirators, as by anything they may say, touching what they intended to do.' "

*International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581–82 (Tex.1963). The evidence shows the existence of two agreements: a lease from Lively to McCoy, and a business agreement between Timmers Chevrolet and Lively. We will consider whether conspiracy liability can be imposed upon Lively or Timmers Chevrolet on the basis of either of these agreements.

## LIABILITY OF HARVEY E. LIVELY

■ Although the leasing agreement from Lively to McCoy was effective in 1975, Lively applied for and was issued the 1976 renewal permit for the wrecker involved in the collision. No indication was given on the application that the wrecker business had been turned over to McCoy.

The language of the Pasadena ordinance and the information requested on the application forms reveal that some permit requirements were directed toward the personal attributes of the applicant. The initial application form submitted by Lively for the wrecker inquired about his financial responsibility and moral character. Additionally, each applicant was required to file an insurance policy. A wrecker licensing board was authorized to examine the application and insurance policy to ensure compliance with the ordinance. The ordinance also authorized a hearing to determine whether the "public convenience and necessity" required issuance of a permit. Transfer of permits was prohibited unless the board was notified and a copy of the transfer agreement submitted for approval.

Lively testified that he knew transfer of the permits was illegal. When asked why he had entered into a lease agreement rather than a sale to McCoy, Lively answered that wrecker permits could not be transferred. McCoy was to own the wreckers at the end of the lease; the lease was "so he could apply for permits later on." Beginning in 1975 Lively applied for renewal permits in the name of "Harvey's Wrecker Service" rather than in his own name as had been his practice before the lease. This evidence tends to establish that the immediate purpose of the leasing agreement between Lively and McCoy was to avoid provisions of the permit ordinance. Lively retained title to the wreckers; McCoy, by not making a permit application as "owner," was able to avoid disclosures and obligations to which he might otherwise have been subjected.

The civil conspiracy theory of liability among defendants was argued by the plaintiffs in *Berry v. Golden Light Coffee Co.*,

160 Tex. 128, 327 S.W.2d 436 (1959). The plaintiffs sued for damages sustained in an automobile-truck collision, due to the truck driver's negligence. As a basis for conspiracy liability against the coffee company, they alleged an agreement between the truck's owner and the coffee company to transport coffee in violation of the Motor Vehicle Carrier Act. Reversing a summary judgment in favor of the coffee company, this court stated that if such an agreement existed, the accident could be considered to be in furtherance of the agreement. The coffee company's role in that agreement would be sufficient to render it liable to the plaintiffs for the negligence of the driver. *Id.* at 440.

In *Berry v. Golden Light Coffee Company*, a second principle was suggested as a basis for holding the coffee company liable: "[O]ne holding a certificate or permit authorizing him to operate a motor carrier over the highways of the State may not delegate to another the rights conferred by such certificate or permit and then release himself from liability to those injured by the negligence of the wrongfully delegated party." *Id.* at 439. The public policy favoring liability in such cases was expressed in *Emerson v. Park*, 84 S.W.2d 1100 (Tex.Civ. App.—Galveston 1935, writ dism'd):

"We think that the public policy of this state, as expressed in the Motor Bus Law, with reference to the right of a party to use the public highways for the transportation by motor vehicles, commodities for hire, and as a common carrier, and with reference to the duty to protect the public, will not permit one who acquires a permit from the Railroad Commission to operate as a motor carrier to delegate the rights conferred by such permit to a third party, and by so doing release himself from liability to those injured by the negligence of the wrongfully delegated party. No party to whom such permit is issued should be permitted to transfer to another the rights conferred upon him only by the permit. No person should be permitted to traffic in such permits, for if such can be done the party could indirectly usurp the authority of the Railroad

Commission, in that he is undertaking to confer upon another the right conferred upon him only."

*Id.* at 1102–03. This concept has been applied in other vehicle permit cases in which defendants have been charged with unlawfully transferring permit rights and responsibilities. *See Greyhound Van Lines, Inc. v. Bellamy*, 502 S.W.2d 586, 588 (Tex.Civ.App. —Waco 1973, no writ); *Wardlow v. Newberry*, 319 S.W.2d 437, 442 (Tex.Civ.App.— Eastland 1958, no writ); *McCarthy v. Valdez*, 10 S.W.2d 1051, 1053 (Tex.Civ.App.— Austin 1928, writ dism'd). The permit laws are said to impose duties upon the holder that cannot be delegated. Once negligence has been established, the permit holder is not allowed to avoid liability on the theory that the driver was an independent contractor. This rule developed as public policy required policing of the public highways and the commercial traffic and, in turn, attention to the interrelation of those carriers holding permits with those who do not.

Having been issued a permit to operate wreckers, Lively was charged with the duty of complying with the ordinance. Several provisions of the ordinance were designed for the protection of the public, such as the requirement for insurance and approval of equipment. Dangerous and irresponsible practices in the wrecker business, such as listening for police accident reports and speeding to accident sites, or hindering traffic clearance and emergency aid, have led to the necessity for regulations such as the Pasadena ordinance. One object of the ordinance was to fix the identification of those who were to operate the wreckers, and fix liability upon a financially responsible party. Lively's lease to McCoy was an attempt to transfer his permit rights in contravention of express provisions of the ordinance. He is not relieved of the responsibilities accompanying his permit holder status by relinquishing control of his business to McCoy, and will be liable as if he had not attempted the unlawful transfer. We hold that Lively is liable for Carroll's injuries, the accident having occurred through the negligence of a wrecker service

driver while in furtherance of the wrecker service's business.

## LIABILITY OF TIMMERS CHEVROLET

### The Agreement Between Timmers Chevrolet and Lively

Carroll contends that Timmers Chevrolet should be liable as a conspirator because the business practices between Timmers and the wrecker service was an unlawful evasion of the ordinance. This argument is based in part on the fact that Timmers' affiliation with the wrecker service was not disclosed on the permit application under which the wrecker was operated.

We agree that the ordinance is intended to impose certain duties upon those who actually operate wreckers as a business or a part of the business of storing, wrecking, or repairing automobiles. This is made clear by the definition given for "owner," which emphasizes the applicant's participation as an operator rather than whether he merely holds title. Permits were to be applied for by the "owner." To further ensure that the actual operator of an emergency vehicle complied with the ordinance it further provided that if an emergency auto wrecker was to be operated in the name of a company other than the owner, the permit was to be issued in the joint names. While the permit ordinance did not require that the same entity own title to, operate, and bear the name under which the wrecker was operated, it did require disclosure whether separate entities were to share these capacities. Lively's permit application did not comply with these requirements.

The permit ordinance also required a name on the wrecker; the wrecker in the collision had the name of Timmers Chevrolet painted on the sides and front. The painting was done with Timmers' permission and paid for by Timmers. All requests to Timmers for towing were dispatched by radio to the wrecker service, which was obligated to do the towing if a wrecker was available. Invoicing for towing done for Timmers' customers was handled on a monthly basis through Timmers. Testimony was introduced that one of the telephone directory listings for Harvey's Wrecker Service was the same as for Timmers' 24-hour service. The effect of the arrangement between Timmers and the wrecker service was to provide wrecker service for individuals who called Timmers for automobile service or repairs. Also, Timmers' name on the wreckers could attract customers it might not otherwise have had.

■ Nevertheless, we fail to find a sufficient legal basis for holding Timmers liable under the facts of this case. Under the conspiracy theory, its liability can extend only to injuries caused while the wrecker was operated in furtherance of the unlawful purpose. An alleged conspirator is not liable for an act not done in pursuance of the common purpose of the conspiracy. See *Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436 (1959). At the time of the accident, the wrecker was on its way to pick up a vehicle belonging to a Mr. George, who had no connection with Timmers Chevrolet. Mr. George had contacted Pasadena Datsun to obtain a wrecker for his automobile. Pasadena Datsun, another "regular customer" of Harvey's Wrecker Service, had given him the name of Harvey's Wrecker Service. Mr. George's vehicle was to be taken to his home. Assuming that Timmers' involvement in the operation of the wrecker service was a conspiracy, towing done for an individual who was not a Timmers customer, and who had not relied on Timmers' advertising on the wrecker, and had not in any other way been led to believe that Timmers operated a towing service, cannot be deemed to be in furtherance of such a conspiracy. The agreement between Timmers Chevrolet and Lively had reference to Timmers customers and attracting customers who saw Timmers' name on the trucks. Although some latitude is given for the specific means used for carrying out the purpose of the conspiracy, the policy considerations of imposing liability upon those who unlawfully attempt to delegate permit rights will not justify liability for an accident not in furtherance of the unlawful agreement. In *Berry v. Golden Light Coffee Co.*, the accident occurred

while the truck was hauling coffee for the coffee company, and was therefore clearly within the scope of the agreement to unlawfully transport coffee. *See id.* at ,439–40. Even if it be assumed that Timmers had a potential right to control the wrecker drivers, we do not find that the wrecker driver was acting in furtherance of Timmers' interest in his performance of the task undertaken prior to the time of plaintiff's injury. That task was performed in his capacity as driver for Harvey's Wrecker Service; there is no evidence to show that he had been solicited by or referred to the wrecker service as a result of the cooperative activities of Timmers Chevrolet and the wrecker service.

■ The jury's failure to find that the wrecker driver was "operating the wrecker wholly, or partially, in furtherance of a mission for the benefit of Timmers Chevrolet and subject to their right to direct and control the operation of the wrecker" is supported by the evidence and is not challenged here. This finding rebutted the presumption that the driver was a Timmers agent acting in furtherance of Timmers' business, which arose from the fact that the wrecker bore the name of Timmers Chevrolet. *Cf. Henderson Drilling Corp. v. Perez*, 304 S.W.2d 172, 174 (Tex.Civ.App.—San Antonio 1957, no writ). None of the cases which have departed from the general rule of nonliability of an independent contractor under facts similar to this case, have done so when the driver was not in furtherance of the defendant's business. The arrangement between Timmers and the wrecker service did not amount to a joint venture. *Cf. Martin v. Weaver*, 161 S.W.2d 812 (Tex. Civ.App.—El Paso 1941, no writ).

Carroll also contends that the trial court's judgment against Timmers Chevrolet should be affirmed because of the finding that Timmers was an "owner" within the meaning of the ordinance, and had no permit in its own name. For the same reasons Timmers is not liable as a co-conspirator, it is not liable as an "owner." The accident was not attributable to, or connected with, unlawful conduct on the part of Timmers Chevrolet.

*The Lease from Lively to McCoy*

■ The object and purpose of the agreement between Timmers Chevrolet and the wrecker service is distinguishable from the lease from Lively to McCoy. The object of the lease was to transfer all control of the wrecker service, including wreckers and drivers, to McCoy who had no permit. The lease unlawfully delegated all rights and responsibilities conferred by the permit to McCoy, and the accident occurred in pursuit of business for McCoy. There is no evidence, however, to link Timmers Chevrolet with the lease from Lively to McCoy. Although the purpose of the lease was unlawful, Timmers cannot be liable as a co-conspirator when it did not participate in, nor was aware of, the unlawful purpose of the lease agreement. *See Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex.1968).

■ The jury finding that a conspiracy existed among the three alleged conspirators, McCoy, Lively, and Timmers Chevrolet, is not necessarily invalidated by a finding that Timmers did not participate. This is true because different facts were alleged to connect the several alleged conspirators to a common purpose. "It is not required that each and every act of a conspirator be shown to have been in concert with the others . . . ." *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (1963). A common purpose may have existed between Lively and McCoy to unlawfully evade the permit ordinance in the absence of additional facts necessary to implicate Timmers Chevrolet.

CONCLUSION

In conclusion, we find vicarious liability on the part of Harvey E. Lively arising from his attempt to transfer his permit rights by leasing the entire business to McCoy. As to Timmers Chevrolet, however, we find that it is not implicated in the lease; moreover, its own previously negotiated business agreement with Lively cannot be the basis for conspiracy liability for an

accident not in furtherance of that agreement.

For the reasons stated, the judgment of the court of civil appeals is reversed in part and affirmed in part. As to Lively, the judgment of the court of civil appeals is reversed, and the judgment of the trial court that Lively is jointly and severally liable for Carroll's injuries is affirmed. As to Timmers Chevrolet, the judgment of the court of civil appeals that Carroll take nothing is affirmed.

GARWOOD, J., not sitting.