# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 16-30517

———

Consolidated w/ 16-31044

BRYANT LYLES,

      Plaintiff-Appellant,

v.

MEDTRONIC SOFAMOR DANEK, USA, INC.,

      Defendant-Appellee.

———

Appeals from the United States District Court
for the Western District of Louisiana

———

Before JOLLY and ELROD, Circuit Judges, and STARRETT, District Judge.[*]
KEITH STARRETT, District Judge:

Appellant Bryant Lyles was admitted to LSU Health Sciences Center Shreveport ("LSUHSC") on May 9, 2013, and underwent anterior corpectomy and discectomy surgery on May 10, 2013. A Verte-Stack implant, a vertebral body replacement device, was placed in Lyles's cervical spine, along with Progenix, a putty-like bone graft material that was mixed with bone dust. An Atlantis Translations Anterior Cervical Plate System ("Atlantis Plate") was also implanted to stabilize the Verte-Stack and the vertebral bodies and to

—————————

[*] District Judge of the Southern District of Mississippi, sitting by designation.

United States Court of Appeals
Fifth Circuit

**FILED**

September 11, 2017

Lyle W. Cayce
Clerk

No. 16-30517
Cons. w/ 16-31044

promote fusion. Some time after the surgery, the Atlantis Plate either broke or became displaced. The Verte-Stack, Progenix, and Atlantis Plate were all manufactured by the Appellee Medtronic Sofamor Danek, USA, Inc. ("MSD"). Lyles brought suit against MSD in Louisiana state court under the Louisiana Products Liability Act ("LPLA") for both the Atlantis Plate and an Infuse Bone Graft Device ("Infuse").[1]

The district court granted summary judgment on claims dealing with the Atlantis Plate on March 23, 2016. On May 26, 2016, Lyles moved for relief from judgment under Federal Rule of Civil Procedure 60 based on newly discovered evidence on the Verte-Stack, which the district court denied. Lyles appeals both of these rulings. Finding that summary judgment was warranted, we AFFIRM the district court's ruling on the Atlantis Plate. We also AFFIRM the district court's denial of Lyles's motion under Rule 60, finding that it did not abuse its discretion.

**I.**

MSD is a subsidiary of Medtronic, Inc., and is the manufacturer of the Atlantis Plate, Infuse, Verte-Stack, and Progenix. The Atlantis Plate consists of two separate metal components held together by a track and runner system to form one plate. Infuse is a bone graft device consisting of a collagen sponge material and bioengineered bone protein. The Verte-Stack is a vertebral body replacement device, and Progenix is a putty-like bone graft material. All four products are stored at LSUHSC prior to use in any surgery and retrieved by a hospital employee or an MSD sales representative prior to surgery.

Lyles was admitted to LSUHCS on May 9, 2013, complaining of bilateral arm and hand weakness. Physicians noted he had an ataxic gait.[2] An MRI

---

[1] The claims involving Infuse were dismissed by the district court and not appealed.
[2] An ataxic gait refers to an "[u]nstable ability to ambulate or walk around."

2

No. 16-30517
Cons. w/ 16-31044

showed severe spinal stenosis[3] behind the C5 vertebral body, as well as the C4-C5 and C5-C6 disc spaces. He was diagnosed with cervical cord compression with myelopathy,[4] and it was decided that he could benefit from a C5 corpectomy.[5]

Dr. Anthony Sin performed an anterior corpectomy and discectomy[6] surgery on Lyles on May 10, 2013. He replaced Lyles's C5 vertebral body with a Verte-Stack implant and inserted Progenix mixed with Lyles's bone dust into the implant. To hold the Verte-Stack in place and promote union between it and the C4 and C6 vertebral bodies, he also inserted the Atlantis Plate, which was attached to the C4 and C6 vertebrae. Dr. Shihao Zhang assisted Dr. Sin during this surgery.

According to Dr. Lynn Stringer, Lyles's expert, and Dr. Hallet Mathews, x-ray images taken after surgery indicate that the Atlantis Plate broke a short time after surgery, leaving the two metal components separated.[7] The radiologist did not detect any problems with the Atlantis Plate at the time these images were taken. Lyles was discharged from LSUHSC on May 14, 2013.

On May 20, 2013, Lyles returned to LSUHSC, stating that his condition had not improved and reporting that he had fallen twice since discharge. Concerned that the Atlantis Plate had broken, Dr. Sin ordered more x-rays and found slight displacement of the Plate, but concluded from further tests that it

---

[3] Spinal stenosis refers to the "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine, caused by encroachment of bone upon the space."

[4] Myelopathy is "any functional disturbance or pathological change in the spinal cord."

[5] A corpectomy is the removal of the vertebral body.

[6] The discectomy involved the removal of the bone spurs and disc material between the disc spaces C4-C5 and C5-C6.

[7] Dr. Sin maintains that the x-ray only shows misalignment of the Atlantis Plate, not breakage. For simplicity's sake, this opinion assumes *arguendo* that the Atlantis Plate broke.

had not broken or become unstable.  Dr. Stringer and Dr. Mathews both agree that these images are substantially similar to those taken the night of the surgery and show that the Atlantis Plate had broken.

Lyles's symptoms did not improve over time as his C4 and C6 vertebrae failed to fuse.  He continued to suffer pain in his neck and arms, lack of feeling and strength in his hands, and issues with his ability to walk.

On February 6, 2014, Dr. Sin performed a second surgery on Lyles, which included a posterior decompressive cervical laminectomy at the C4-C6 vertebrae and the insertion of rods and screws for arthrodesis of the C3-C6 vertebrae.

Both the Verte-Stack and the Atlantis Plate remain in place on Lyles's spine.  On December 12, 2014, Dr. Sin examined Lyles and found that the anterior and posterior cervical spines have maintained alignment.  Dr. Sin maintains that the Atlantis Plate never failed.

## II.

Lyles originally brought suit in Louisiana state court on February 10, 2015.  The case was removed to the Western District of Louisiana on March 26, 2015.  In his Third Amended Complaint, Lyles brought defective design and defective construction claims under the LPLA against MSD for the Atlantis Plate and Infuse, as well as claims under the Louisiana Unfair Trade Practices and Consumer Protection Law and a claim of intentional fraud for Infuse.  The Infuse claims were dismissed by the district court on January 20, 2016, as prescribed and, alternatively, barred by the exclusivity provision of the LPLA.  Lyles does not appeal this dismissal.

MSD moved for summary judgment on the remaining defective design and defective construction claims for the Atlantis Plate on January 25, 2016, arguing that Lyles could not show an alternative design that would have

prevented his damage for his defective design claim and that he had failed to show that the Atlantis Plate deviated from MSD's specifications or performance standards so as to make it unreasonably dangerous. Lyles conceded he could not show an alternative design, but argued for the first time that the *res ipsa loquitur* doctrine applied to create a presumption that the Atlantis Plate contained a defect in construction. The district court found that Lyles did not meet his burden to establish that *res ipsa loquitur* applied and granted summary judgment on March 23, 2016. Lyles appealed.

On May 26, 2016, while his appeal was pending, Lyles filed a motion under Federal Rule of Civil Procedure 60(b)(2) and (3), claiming that he had newly discovered evidence concerning the Verte-Stack and Progenix used in his surgery and that MSD had concealed this evidence from him during discovery. He asked that the district court grant him relief from judgment and to reopen his case. The district court allowed additional sur-replies from both parties and held a hearing on this motion on August 24, 2016. After taking the parties' arguments and evidence into consideration, the district court ultimately denied Lyles relief on August 31, 2016. Lyles appealed.

The two appeals were consolidated by Court Order on November 11, 2016.

### III.

We first review the district court's grant of summary judgment. This Court reviews a grant of summary judgment *de novo* and applies the same standard as the district court. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (citation omitted). "Although on summary judgment the record is reviewed *de novo*, this court . . . will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Am. Family Life Assur. Co. of*

5

No. 16-30517
Cons. w/ 16-31044

*Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (per curiam) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992)) (alteration in original).  The Court is "not limited to the district court's reasons for its grant of summary judgment and may affirm the district court's summary judgment on any ground raised below and supported by the record."  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (citation omitted).

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted).  The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial."  *Id.*

In non-jury cases, we have recognized "that it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts."  *In re Placid Oil Co.*, 932 F.2d 394, 398 (5th Cir. 1991) (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).  Therefore, "at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."  *Id.*  Under a *de novo* review of a summary judgment, this Court "still app[ies] the manifest-error standard of review to the district court's evidentiary rulings."  *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 775 (5th Cir. 2000) (citation omitted).  A "manifest error" is an

6

error "that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citations and internal quotations omitted).

## A.

Lyles argues that the *res ipsa loquitur* doctrine applies under the LPLA to his defective construction claim because he has shown that there are no other reasonably probable causes for the breakage of the Atlantis Plate.[8]

MSD moved for summary judgment on the basis that Lyles could not establish the essential elements of his defective construction claim because he could not show that the Atlantis Plate contained an unreasonably dangerous characteristic due to its construction and because he could not show that an unreasonably dangerous characteristic existed in the Atlantis Plate at the time it left MSD's control.

Under Louisiana Revised Statute 9:2800.55, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." Under the statute, a claimant must show "not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Morris v. United Servs. Auto. Ass'n*, 756 So. 549, 558 (La. Ct. App. 2000) (citations omitted). Lyles produced no evidence below showing either what MSD's specifications or performance standards

---

[8] Whether the Atlantis Plate breaking constituted a "failure" of the Plate is a disputed fact and not conceded by MDS on summary judgment. Dr. Sin and Dr. Mathews testified that the Atlantis Plate, which has never been removed, did not fail and is still functioning as intended.

No. 16-30517
Cons. w/ 16-31044

were for the Atlantis Plate or how the Atlantis Plate used in his surgery deviated from those specifications or performance standards. Instead, Lyles relies solely on the *res ispa loquitur* doctrine to argue that the only reasonable inference that would explain the Atlantis Plate's breakage is that there was a defect in its construction.

The Louisiana Supreme Court explains the principle of *res ipsa loquitur* as "a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendants is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses." *Montgomery v. Opelousas Gen. Hosp.*, 540 So. 2d 312 (La. 1989) (citing *Boudreaux v. Am. Ins. Co.*, 264 So. 2d 621, 636 (La. 1972)). However, because *res ipsa loquitur* is "a qualification of the general rule that negligence is not to be presumed," it "must be sparingly applied." *Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992) (quoting *Day v. Nat'l U.S. Radiator Corp.*, 128 So. 2d 660, 665 (La. 1961)). *Res ipsa loquitur* is reserved for those circumstances that "are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury." *Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 49 (La. 2006) (quoting *Larkin v. State Farm Mut. Auto. Ins. Co.*, 97 So. 2d 389, 391 (La. 1957)).

The Louisiana Supreme Court has specifically held that *res ipsa loquitur* can be applied in products liability actions and used to "shift the burden of proof to the defendant-manufacturer." *Lawson*, 938 So. 2d at 49. For *res ispa loquitur* to be properly invoked, a plaintiff must show that three requirements are met:

No. 16-30517
Cons. w/ 16-31044

1)    the facts must indicate that the plaintiff's injuries would not have occurred in the absence of negligence;

2)    the plaintiff must establish that the defendant's negligence falls within his scope of duty to plaintiff; and

3)    the evidence should sufficiently exclude inference of the plaintiff's own responsibility or the responsibility of others besides the defendant in causing the accident.

*Id.* (emphasis and citation omitted). However, because the plaintiff's "standard of proof is preponderance of the evidence, not proof beyond a reasonable doubt, the plaintiff's evidence need only exclude all other reasonable explanations for his injuries; it need not 'conclusively exclude all other possible explanations for his injuries.'" *Id.* (quoting *Cangelosi v. Our Lady of the Lake Reg'l Med. Ctr.*, 564 So. 2d 654, 664 (La. 1989)).

In *Lawson*, the plaintiffs argued that an airbag malfunction caused by a misaligned clock spring was attributable to a manufacturing defect through the doctrine of *res ipsa loquitur*. 938 So. 2d at 49. The plaintiffs' experts discovered this misalignment, but disassembled the airbag mechanism and failed to mark the position of the clock spring, thereby destroying any potential direct evidence of the misalignment. *Id.* at 50-51. The Louisiana Supreme Court found that, because the experts destroyed the available direct evidence of misalignment, the plaintiffs should not be allowed to take advantage of the *res ipsa loquitur* doctrine. *Id.* at 51. Additionally, though there was no evidence that the clock spring had been accessed until the disassembly by plaintiffs' experts, the court found use of the doctrine inappropriate because the plaintiffs "did not adequately address the probability that a previous owner had accessed, and therefore misaligned, the clock spring mechanism." *Id.*

The Louisiana Court of Appeals found the *res ipsa loquitur* doctrine appropriately applied in *State Farm Mutual Automobile Insurance Co. v.*

*Wrap-On Co., Inc.* 626 So. 2d 874 (La. Ct. App. 1993). *Wrap-On* involved a fire that the plaintiff alleged was caused by a defect in the "heat tape" the manufacturer made, which "resembles an extension cord" and "is used to prevent exposed water pipes from freezing." *Id.* at 875. Because there was no other heat source at the fire's origin and no other reason for the heat tape's ignition other than a defect was offered, the court found that "plaintiffs successfully utilized the doctrine of *res ipsa loquitur* to prove that the heat tape was unreasonably dangerous in construction or composition and that this defect caused its damages." *Id.* at 878-79 (italics added).

In our previous application of Louisiana's *res ipsa loquitur* doctrine to products liability actions, we have held that, where there are other potential causes of injury, a plaintiff's inability to exclude all known potential causes other than a manufacturing defect precluded his reliance on the doctrine. *See Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 249-50 (5th Cir. 2014) (unpublished) (per curiam) (finding that plaintiff could not rely on the *res ipsa loquitur* doctrine when three potential sources of a propane leak had been identified and she could not exclude any of them).

Lyles raised his *res ipsa loquitur* argument for the first time in response to MSD's motion for summary judgment and contended that there was no other reasonable explanation for the Atlantis Plate breaking. He supported his argument in the district court with testimony from Dr. Stringer and Dr. Mathews, as well as his medical records of his second surgery and the warning documentation accompanying the Atlantis Plate.

Lyles also relied on the timing[9] of the Atlantis Plate's breakage to infer a defect under the *res ipsa loquitur* doctrine. He cited three cases for this

---

[9] Lyles maintains that the break happened "within one hour of implantation," citing both Dr. Stringer and Dr. Mathews as supporting this statement. While both experts agree

No. 16-30517
Cons. w/ 16-31044

contention: *Williams v. Emerson Elec. Co.*, 909 F. Supp. 395 (M.D. La. 1995) (applying *res ipsa loquitur* to hold that the failure of a four-day-old ladder was so unusual as to permit the inference of a manufacturing defect); *Joseph v. Bohn Ford, Inc.*, 483 So. 2d 934 (La. 1986) (not applying *res ipsa loquitur* but finding that the brakes failure within six weeks and 3800 miles with no abnormal use supported the inference that the brakes were defective when the vehicle left the manufacturer); and *McNeely v. Ford Motor Co., Inc.*, 763 So. 2d 659 (La. App. 1999) (not applying *res ipsa loquitur* and finding that evidence from several mechanics, who testified that the car engines could not have failed in such a short period of time without a defect, sufficient for reasonable and fair-minded individuals to disagree).

Based on the arguments and evidence presented to the district court, Lyles has not met his burden to "exclude all other reasonable explanations for his injuries." *Lawson*, 938 So. 2d at 49. Unlike his arguments to this Court, in his brief below, Lyles made no attempt to identify and exclude any other explanations for his injuries, instead relying on Dr. Stringer's statements that, based on the information provided to him, he had no other reason for the Atlantis Plate's breakage other than a defect. MSD, however, has pointed to multiple potential explanations, such as those listed in the Atlantis Plate's documentation or malpractice by Dr. Sin, which Lyles did not exclude below.

Furthermore, the cases cited by Lyles in support of his argument that the timing of the break invites the inference of a defect are not persuasive. Of those cases, only *Williams* applies the *res ipsa loquitur* doctrine, and in that case, no other reasonable explanation for the ladder's failure was posited. *See* 909 F. Supp. 395.

---

that the break happened the night of surgery, Dr. Stringer admitted that he did not know how long after surgery the break occurred.

No. 16-30517
Cons. w/ 16-31044

In his brief before us, Lyles makes the additional arguments that there is no evidence for these alternate explanations for the breakage and that Dr. Stringer's report that the procedure was "done properly" excludes these other explanations. However, these arguments fail for two reasons. First, we cannot reverse the district court's ruling on these arguments because they were not presented to the district court. *See Biles*, 714 F.3d at 896. Second, to succeed on the theory of *res ipsa loquitur*, Lyles has the burden of producing evidence excluding other reasonable explanations. Though Lyles argues that there is no evidence for any other cause for the Atlantis Plate's breakage, there is no evidence for a manufacturing defect either, which is why he is invoking *res ipsa loquitur*. The other reasonable explanations for the Atlantis Plate's breakage posited by MSD are equally as likely as a manufacturing defect. It is Lyles who has the burden to adduce evidence excluding them.

In *Lawson*, the plaintiffs failed to do this by failing to address the probability of a previous owner accessing and misaligning the clock spring. 938 So. 2d at 51. In *Ayala*, we found that the plaintiff's failure to exclude other potential causes of a propane leak precluded reliance on *res ipsa loquitur*. 569 F. App'x at 249-50. Conversely, in *Wrap-On*, plaintiffs successfully invoked *res ipsa loquitur* by adducing evidence to show that the heat tape was the only source of heat near the fire's origin and by excluding all other reasons for the heat tape's ignition. 626 So. 2d at 878-79. Because Lyles presented no evidence or argument to the district court to exclude other reasonable explanations for the Atlantis Plate's breakage, he has not shown that *res ipsa loquitur* should be applied.

Finally, even if Lyles had sufficiently shown that *res ipsa loquitur* applied to infer a defect, he has not established that the Atlantis Plate was defective when it left the manufacturer's control. In his response to MSD's

12

No. 16-30517
Cons. w/ 16-31044

motion for summary judgment, Lyles cites Dr. Sin and Dr. Zhang as testifying that MSD's representative retrieved the Atlantis Plate from storage and delivered it to the operating room.  However, as the district court noted, there is no evidence where the Atlantis Plate was stored prior to surgery or who had access to it.[10]  Therefore, even if the district court erred in granting summary judgment on Lyles's *res ipsa loquitur* argument, it could have granted summary judgment on this basis.

**B.**

Lyles also argues that the district court erred when it considered his request to the medical review panel as a pleading and evidence that Dr. Sin's malpractice may have caused the Atlantis Plate to break.  He contends that, under Louisiana law, the document was not a pleading and that, even if it were, the district court erred in relying on it at the summary judgment stage.  Lyles further contends that the district court was in error for finding that Dr. Sin's use of Infuse could have caused the Atlantis Plate to break.

Nothing in the district court's opinion suggests that Dr. Sin used Infuse, which is not mentioned in the opinion.  We cannot find, then, that the district court was in error for considering the use of Infuse when it does not appear that it did.

As detailed above, the operative question in reviewing the district court's decision as to the applicability of the *res ipsa loquitur* doctrine is not whether there is evidence to support other reasonable explanations for the Atlantis Plate's breakage, but rather whether Lyles has adduced evidence to exclude other reasonable explanations. The district court did not create manifest error by holding that Lyles's own allegation of malpractice against Dr. Sin is

---

[10] Dr. Sin's testimony suggests that "everyone else who works in the hospital" had access to where the Atlantis Plate was stored.

evidence that malpractice was a reasonable explanation of the Atlantis Plate's breakage that Lyles needed to exclude.  The district court did not rule that the request to the medical review panel was evidence of malpractice on the part of Dr. Sin, but instead held that it presented an additional reasonable explanation for the breaking of the Atlantis Plate.

Even if we were to find that this was manifest error, though, it is harmless, as summary judgment could have been granted regardless of this ruling.  There are other reasonable explanations for the Atlantis Plate's breakage that were not excluded by Lyles in the district court and that would have precluded the applicability of the *res ipsa loquitur* doctrine.

Because the district court did not create manifest error by considering the malpractice complaint and because we find that Lyles did not meet his burden under the *res ipsa loquitur* doctrine, we affirm the grant of summary judgment.

**IV.**

Having decided that the grant of summary judgment was proper, we now turn to the district court's decisions under Federal Rule of Civil Procedure 60.

"[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for abuse of that discretion." *Hesling v. CSX Transp. Inc.*, 396 F.3d 632, 638 (5th Cir. 2005) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc)) (alteration in original).  "[I]t is not enough that a grant of the motion might have been permissible or warranted; rather, the decision to deny the motion [under Rule 60(b)] must have been sufficiently *unwarranted* as to amount to an abuse of discretion." *Pease v. Pakhoed Corp.*, 980 F.2d 995, 998 (5th Cir. 1993) (quoting *Fackelman v. Bell*, 564 F.2d 734, 736 (5th Cir. 1977)) (emphasis in original).  "A district court abuses its discretion if it bases its decision on an

No. 16-30517
Cons. w/ 16-31044

erroneous view of the law or on a clearly erroneous assessment of the evidence." *Hesling*, 396 F.3d at 638 (quoting *Kennedy v. Tex. Utils.*, 179 F.3d 258, 265 (5th Cir. 1999)).

## A.

Lyles's first arguments are under Federal Rule of Civil Procedure 60(b)(2).  Rule 60(b)(2) allows the district court to relieve a party from final judgment on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b)(2).  Rule 59(b) states that "[a] motion for new trial must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(b).  Lyles argues that documents concerning the Verte-Stack and Progenix are newly discovered evidence under Rule 60(b)(2).

"To succeed on a motion for relief from judgment based on newly discovered evidence, our law provides that a movant must demonstrate:  (1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original judgment."  *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003) (citation omitted).

Lyles argues that the Verte-Stack and Progenix documents should have been produced in response to his Request for Production No. 5, which asked for "[a]ll information retained by Medtronic concerning the medical devices implanted in Bryant Lyles's spine on May 10, 2013 [sic] including date of design, manufacture, sale and all information required to be retained by Medtronic pursuant to 21 CFR 821.25."  MSD's response to this request dealt only with Infuse and the Atlantis Plate.  Lyles also contends that his Interrogatory No. 2 should have elicited information as to the Verte-Stack and

Progenix, as it asked MDS to "[i]dentify any and all devices or products manufactured or sold by Medtronic which were used on Bryant Lyles at any time." In response to this, MSD directed Lyles to the hospital records from LSUHSC.

The district court found that the Verte-Stack and Progenix had been identified "numerous" times throughout the litigation and pointed specifically to Dr. Mathews' report in May 2015 as identifying the Verte-Stack as a device used in Lyles's surgery. It further found that even if Lyles's Production Request No. 5 and Interrogatory No. 2 "were designed to elicit documentation on the Verte-Stack and Progenix, then his actions following the receipt of MSD's September 2015 discovery responses do not constitute due diligence." Because Lyles and his attorneys knew these products were manufactured by MSD and used in Lyles's surgery, the district court found that he did not exercise due diligence because he failed to make any further inquiry "as to why MSD failed to produce documentation or make an objection to the production of such evidence" and failed to "file a motion to compel" regarding this documentation. *Id.*

The Court reviews the district court's decision for abuse of discretion. *See Hesling*, 396 F.3d at 638. The record shows that Lyles knew that both the Verte-Stack and Progenix were used in his surgery prior to the grant of summary judgment on March 23, 2016. Dr. Stringer, Lyles's own expert, testified in his deposition on January 18, 2016, that the Verte-Stack and Progenix[11] were used in Lyles's surgery. In the proposed pre-trial order, dated February 29, 2016, Lyles stipulated that Dr. Sin had used both the Verte-Stack and Progenix in his surgery. It is clear, then, that Lyles was aware that the

---

[11] Progenix is incorrectly referred to as "progenic" in the deposition transcript.

Verte-Stack and Progenix were used in his surgery before judgment was entered against him.[12]   The record also demonstrates that Lyles did not attempt to pursue the discovery of documents dealing with the Verte-Stack or Progenix prior to judgment being entered against him.  Based on these facts, we do not find that the district court's denial under Rule 60(b)(2) was a "clearly erroneous assessment of the evidence."  *See Hesling*, 396 F.3d at 638.

**B.**

Lyles also argues that he is entitled to relief under Federal Rule of Civil Procedure 60(b)(3).  Rule 60(b)(3) allows the court to relieve a party from judgment on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party."  Lyles argues that MSD's failure to produce the Verte-Stack and Progenix documents in response to his Production Request No. 5 amounted to "fraud . . . , misrepresentation, or misconduct."  Fed. R. Civ. P. 60(b)(3).

To succeed under Rule 60(b)(3), Lyles first has the burden of proving fraud or other misconduct by clear and convincing evidence and must then show that it prevented him "from fully and fairly presenting his case."  *Hesling*, 396 F.3d at 641.

Lyles served his discovery requests on MSD on May 28, 2015.  At the time, the operative complaint was the First Amended Complaint, which did not identify a specific device as the subject of Lyles's claims and stated only that "an internal orthopedic device manufactured" by MSD had been installed onto his spinal column.  MSD served its responses and objections to Lyles on September 30, 2015.  By then, Lyles had filed his Third Amended Complaint,

---

[12] In fact, the district court's opinion granting summary judgment referenced both the Verte-Stack and Progenix by name, demonstrating that both products were identifiable from the record prior to judgment.

which specifically identified Infuse and the Atlantis Plate as the devices subject to the complaint and made no mention of either the Verte-Stack or Progenix. Lyles argues that documentation on the Verte-Stack and Progenix should have been included in MSD's responses.

Lyles states that these documents show that the Verte-Stack should not have been used in the cervical spine or with the Atlantis Plate. He further argues that MSD was aware of the potential problems with the Verte-Stack and purposefully withheld the documents.

The district court found that "[f]rom the time Lyles began pursuing a malpractice claim against Dr. Sin and at the time he filed this lawsuit, Lyles's focus was on the Atlantis Plate. Later, he also pursued a claim based on the alleged use of Infuse." The court stated that, "[a]lthough the [R]equest [for Production No. 5] was broadly worded, it was not unreasonable for counsel [for MSD] to interpret the request as limited to the two products about which the parties were in dispute." Ultimately, the district court held that Lyles had "failed to present the Court with evidence that MSD or its counsel engaged in any misconduct at all" and that he had "done no more than speculate that MSD and its counsel were aware of issues with Verte-Stack and Progenix and, therefore, intentionally failed to disclose information about those products."

The Court reviews the district court's ruling for abuse of discretion. The only evidence of misconduct Lyles produced was that MSD did not answer his interrogatory and production request with information about the Verte-Stack.[13] The district court found that MSD's actions were in good faith because it was not unreasonable to read both the interrogatory and production request

---

[13] Lyles also makes vague reference to a California lawsuit, which he discussed more fully in the district court. This lawsuit is a *qui tam* action which the district court found was not served on "any Medtronic or MSD entity until July 2016, after this lawsuit was dismissed."

No. 16-30517
Cons. w/ 16-31044

as dealing only with Infuse and the Atlantis Plate given the procedural history of the case, which narrowed the MSD products at issue down to Infuse and the Atlantis Plate by the time they were answered.  We do not find that this ruling was a "clearly erroneous assessment of the evidence."  *See Hesling*, 396 F.3d at 638.  The district court therefore did not abuse its discretion.

Because we find no abuse of discretion in the district court's rulings under Rule 60(b)(2) or (3), we affirm its denial of relief from judgment.

## V.

For the reasons stated above, we AFFIRM the district court's grant of summary judgment. We further AFFIRM the district court's denial of relief under Federal Rule of Civil Procedure 60(b).