# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 8, 2020

Lyle W. Cayce
Clerk

No. 19-40899

William J. Adams; Ray Aikens, Sr.; Kathleen J. Aikens; Linda Pearl Akridge; Ronald W. Akridge; et al,

*Intervenor Plaintiffs—Appellants*,

*versus*

Alcolac, Incorporated; Rhodia Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:18-CV-185

Before King, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:

The plaintiffs are primarily former U.S. military personnel who were injured by Saddam Hussein's use of mustard gas during the Gulf War. The plaintiffs seek to hold Alcolac, Inc. liable for these injuries because, they allege, it illegally provided the government of Iraq with thiodiglycol, which was then used to create mustard gas. Previous litigation has already foreclosed of all of the plaintiffs' claims except two: (1) a claim under the Justice Against Sponsors of Terrorism Act and (2) a civil-conspiracy claim under Texas law. We hold that the first claim fails because the statute does

No. 19-40899

not provide a cause of action for injuries caused by acts of war, and the second fails because the plaintiffs have not demonstrated that Alcolac or anyone else committed a tort in furtherance of the alleged conspiracy. Accordingly, we AFFIRM the district court's grant of summary judgment to Alcolac.

## I.

## A.

Thiodiglycol (TDG) is a chemical with a variety of uses. It is used in the textile industry and to manufacture ink, but it can also be used to produce mustard gas. In the 1980s, Alcolac, an American chemical manufacturer, produced TDG and, through a wholly owned subsidiary, exported it.[1] Because of TDG's potential for misuse, its exportation to Iraq was legally prohibited.

As relevant here, in 1987 and 1988, Alcolac sold 538 tons of TDG that its subsidiary then exported to Belgium and the Netherlands in four shipments. Although the buyer said that the TDG would be used in the textile industry in Western Europe, the TDG was subsequently transshipped to Jordan, and then to Iraq. According to the plaintiffs, Alcolac "knew or had reason to know that these massive shipments of TDG were likely bound for a prohibited destination."

In 1991, U.S. troops, including the plaintiffs, entered Iraq as part of Operation Desert Storm. There, the plaintiffs allege that they were exposed to, and injured by, mustard gas.

---

[1] Alcolac disputes the extent to which it, rather than its subsidiary, can be held liable. Because we affirm on other grounds, we do not reach this issue.

No. 19-40899

**B.**

The plaintiffs filed this case in Texas state court in 1994, seeking to hold Alcolac liable for their mustard-gas-related injuries via products-liability and negligence claims. *See Alarcon v. Alcolac Inc.*, 488 S.W.3d 813, 816 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). In 2011, Alcolac chose one plaintiff as a bellwether and sought summary judgment against him. *See id.* The trial court granted the motion, and the Texas Court of Appeals affirmed. *Id.* at 816-17, 829. The basis for the ruling was causation: the plaintiff had failed to present sufficient evidence that the mustard gas to which he was allegedly exposed "was manufactured with TDG supplied by Alcolac." *Id.* at 818.

Before Alcolac could move for summary judgment against the rest of the plaintiffs, they amended their complaint, adding two new claims. First, they alleged that "Alcolac and agents of the Iraqi government conspired with each other to knowingly violate provisions of the Export Administration Act . . . to accomplish the unlawful sale and shipment of large quantities of TDG to Iraq." Second, they alleged that "Alcolac knowingly and/or recklessly sold large quantities of TDG to agents of the government of Iraq" in violation of the Justice Against Sponsors of Terrorism Act (JASTA).

With a federal cause of action now in play, Alcolac removed the case to federal district court. Alcolac indicated that it would again seek summary judgment, and the district court obtained stipulations from the plaintiffs that their original products-liability and negligence claims were no longer viable in light of the Texas Court of Appeals' decision. Accordingly, only the two new claims, plus a derivative claim under the Texas Uniform Fraudulent Transfer Act (TUFTA), remained to be decided.

The magistrate judge recommended granting Alcolac's motion for summary judgment. First, the magistrate judge observed that JASTA does

not allow claims "for injury or loss by reason of an act of war," 18 U.S.C. § 2336(a), which would include the plaintiffs' Gulf War injuries. Second, the magistrate judge concluded that the civil-conspiracy claim was not viable because, under Texas law, such a claim must be based on the defendant's participation in actionable conduct, and the plaintiffs had merely alleged a violation of the Export Administration Act, which does not give rise to a private cause of action.[2] The district court adopted the magistrate judge's report and recommendation in full and granted the motion for summary judgment, and this appeal followed.

## II.

"This Court reviews a grant of summary judgment *de novo* and applies the same standard as the district court." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case.' The nonmovant must then 'come forward with specific facts showing that there is a genuine issue for trial.'" *Lyles*, 871 F.3d at 310-11 (citation omitted).

We "view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor," *Star Fin. Servs., Inc. v. Cardtronics USA, Inc.*, 882 F.3d 176, 179 (5th Cir. 2018), but "[w]e may affirm a grant of summary judgment 'based on any rationale presented to the district court for consideration,'" *Nola Spice Designs, LLC*

---

[2] The magistrate judge also concluded that the fraudulent-transfer claims failed for lack of a successful underlying claim.

No. 19-40899

*v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 887 (5th Cir. 2002)).

### III.

### A.

Under JASTA, "liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with [a] person who commit[s] . . . an act of international terrorism." Pub. L. No. 114-222, § 4, 130 Stat. 852, 854 (2016) (codified at 18 U.S.C. § 2333(d)(2)). "No action shall be maintained under section 2333," however, "for injury or loss by reason of an act of war." § 2336(a). In this context, an "act of war" is defined as "any act occurring in the course of— (A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin." 18 U.S.C. § 2331(4).

Though the plaintiffs admit that their mustard-gas injuries occurred during the Gulf War, a military conflict between the United States, its allies, and Iraq, they argue that Iraq's use of mustard gas "could not be an act of war because it grossly violated the basic norms and rules established by the laws of war." Instead, they argue, Iraq's use of mustard gas qualifies as "international terrorism," because it was used to "'intimidate or coerce a civilian population' or [to] influence 'the policy of a government.'" *See* § 2331(1).

This argument is far removed from the statute's plain text. Neither § 2336(a) nor § 2331(4) contains any suggestion that the act-of-war exception applies only to acts of war that conform to international law. *See Stutts v. De Dietrich Grp.*, No. 03-CV-4058, 2006 WL 1867060, at *4 (E.D.N.Y. June 30, 2006) (concluding that the act-of-war exception applied to use of chemical weapons on U.S. troops during Gulf War). *But see Estate of Klieman v.*

No. 19-40899

*Palestinian Authority*, 424 F. Supp. 2d 153, 166 (D.D.C. 2006) ("As a matter of law, an act that violates established norms of warfare and armed conflict under international law is not an act occurring in the course of armed conflict."). Instead, the exception broadly covers "*any act* occurring in the course of . . . armed conflict, whether or not war has been declared." § 2331(4) (emphasis added). And there can be no doubt that the Gulf War was an "armed conflict." Accordingly, the JASTA claim is foreclosed because the plaintiffs' injuries occurred "by reason of an act of war." § 2336(a).[3]

## B.

"In resolving questions of Texas law, we rely on the authoritative decisions of the Texas Supreme Court." *Tummel v. Milane*, 787 F. App'x 226, 227 (5th Cir. 2019). Under Texas law, a civil conspiracy requires:

> (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017) (citing *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005)). Proving a conspiracy means that each of the defendants can be held liable for "all acts done by any of the conspirators in furtherance of the unlawful combination." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140 (Tex. 2019) (citation omitted).

---

[3] As a fallback position, the plaintiffs also suggest that they may have been injured not in attacks on U.S. troops but when Hussein used mustard gas on Iraqi civilians. The plaintiffs cite no evidence in the record to support this proposition, however.

But civil conspiracy is not an independent tort, so "the agreement itself" does not create a cause of action. *Id.* at 141-42 (quoting *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979)). Rather, a plaintiff must demonstrate that he has been injured by some "act done pursuant to the common purpose" of the conspiracy. *Id.* at 141 (quoting *Carroll*, 592 S.W.2d at 925). In other words, damages "proximately caused by the conspiracy itself" are not enough; the plaintiff must show "some tortious act committed by a co-conspirator pursuant to the conspiracy." *Id.* at 141-42; *accord Carroll*, 592 S.W.2d at 928 ("An alleged conspirator is not liable for an act not done in pursuance of the common purpose of the conspiracy.").

Though the complaint alleges a conspiracy to violate the Export Administration Act,[4] the plaintiffs "do not allege that the violation of the EAA is the underlying tort claim that caused them damages." And with good reason. Although the alleged EAA violations may have proximately caused the plaintiff's injuries, it is undisputed that the EAA does not provide a private right of action. *See Coleman v. Alcolac, Inc.*, 888 F. Supp. 1388, 1397 (S.D. Tex. 1995) (recognizing that "no private cause of action exists under the Export Administration Act"); *Bulk Oil (Zug) A.G. v. Sun Co.*, 583 F. Supp. 1134, 1143 (S.D.N.Y. 1983) (same), *aff'd mem.*, 742 F.2d 1431 (2d Cir. 1984).

Instead, the plaintiffs argue that the EAA violations led to Iraq's use of mustard gas, which they claim constituted battery.[5] But even if that is so,

---

[4] Specifically, the complaint alleges that Alcolac "entered into an agreement with agents of the government of Iraq to ship large quantities of TDG in late 1987 and early 1988. . . . Alcolac and agents of the Iraqi government conspired with each other to knowingly violate provisions of the Export Administration Act."

[5] We assume, without deciding, that the plaintiffs' complaint adequately alleges battery as the tort underlying their civil-conspiracy claim.

the plaintiffs have provided no evidence that Alcolac conspired to commit that battery. *Cf. Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008) ("Chu could only be liable for conspiracy if he agreed to the *injury* to be accomplished; agreeing to the *conduct* ultimately resulting in injury is not enough."). Although in their complaint the plaintiffs asserted that Alcolac "acted to aid and abet Iraq in its efforts to obtain chemical weapons," the plaintiffs now concede that "Alcolac may not have known" that the TDG was destined for "Iraq and Saddam Hussein specifically." Consequently, any conspiracy involving Alcolac could not have had as its "common purpose" the provision of mustard gas to Iraq, much less the use of mustard gas by Iraq in a war that had not yet begun. Instead, at most, the evidence demonstrates Alcolac's participation in a conspiracy to illegally export large quantities of TDG in exchange for money. Because the plaintiffs have identified no tortious conduct involved in achieving that object, the plaintiffs have failed to establish the elements of civil conspiracy. *Cf. Tri*, 162 S.W.3d at 557 ("[M]erely proving a joint 'intent to engage in the conduct that resulted in the injury' is not sufficient to establish a cause of action for civil conspiracy." (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996))).

The plaintiffs argue that it was foreseeable that the exported TDG would be turned into mustard gas by *some* "nefarious character" and that it would then be "used for terrorist activity." Perhaps so, but that misses the point. The question is not whether the plaintiffs' battery was a foreseeable result of the alleged conspiracy but whether the battery was "done in pursuance of the common purpose of the conspiracy," *Carroll*, 592 S.W.2d at 928.[6] Because there is no evidence of a common purpose beyond the initial

---

[6] For this reason, the plaintiffs' reliance on *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), is misplaced. That case recognizes simply that "a conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, *so long*

No. 19-40899

sale and exportation of the TDG, any eventual use of mustard gas on the plaintiffs, even if foreseeable, was not in furtherance of the alleged conspiracy. The plaintiffs' conspiracy claim thus fails for lack of an underlying tort.

## C.

Under TUFTA, "an asset transferred with 'actual intent to hinder, delay, or defraud' a creditor may be reclaimed for the benefit of the transferor's creditors." *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562 (Tex. 2016) (quoting Tex. Bus. & Com. Code § 24.005(a)(1)). This statute is "intended to prevent debtors from defrauding creditors by moving assets out of reach" and therefore "provides a comprehensive statutory scheme through which a creditor may seek recourse for a fraudulent transfer of assets or property."*Sargeant v. Al Saleh*, 512 S.W.3d 399, 411-12 (Tex. App.— Corpus Christi 2016, orig. proceeding [mand. denied]). A "creditor" is an individual "who has a claim," and a "claim" requires "a right to payment or property." Tex. Bus. & Com. Code Ann. § 24.002(3)-(4).

The plaintiffs argue only that because they "have viable underlying claims, the Court should also reverse the Trial Court['s] order dismissing [their] claims under TUFTA." Because the plaintiffs' JASTA and civil-conspiracy claims fail, however, the plaintiffs do not have valid underlying claims. Accordingly, their TUFTA claims fail as well.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

*as the purpose of the act was to advance the overall object of the conspiracy.*" *Id.* at 487 (emphasis added).