# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30258

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2018

Lyle W. Cayce
Clerk

STAR FINANCIAL SERVICES, INCORPORATED, doing business as
Advanced ATM Services,

Plaintiff - Appellant

v.

CARDTRONICS USA, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, JONES, and GRAVES, Circuit Judges.

PER CURIAM:

Plaintiff Star Financial Services, Inc., an ATM operator, having executed a contract with Defendant Cardtronics, USA, Inc. in which Cardtronics agreed to process the electronic transfer of funds associated with operating ATMs, initiated this breach-of-contract action alleging that Cardtronics failed to correct certain account information—an error that resulted in approximately $250,000 of misdirected funds. The district court granted summary judgment in favor of Cardtronics, finding that Star Financial failed to establish that Cardtronics had an obligation under the contract to correct the specified account information. We reverse and remand.

No. 17-30258

## I.

Star Financial operates a large network of ATMs, ("Terminals"), in Maryland, the District of Columbia, and Virginia. In February 2012, Star Financial executed an agreement, (the "Contract"), with ATM Deployer Services, LLC—succeeded by Columbus Data Services and subsequently Cardtronics by merger—to process the electronic transfer of funds associated with operating ATMs.

To commence, a Star Financial ATM must be "set up" in Cardtronics's system. This requires Star Financial to provide Cardtronics with a "Terminal Set-up Form," through which Star Financial, among other things, designates a bank account into which Cardtronics is to credit amounts withdrawn from a particular terminal. When a customer withdraws cash from a Star Financial ATM, Cardtronics debits the amount withdrawn from the customer's bank account and then credits that amount back to the account that Star Financial designated on the Terminal Set-up Form. Star Financial designates its "Settlement Account" as the bank account for Star Financial–funded ATMs.

The Contract captures this process in sections 2.1, 4.1, and 4.2. Section 2.1 sets forth the services that Cardtronics provides to Star Financial.[1] Section 4.1 explains Star Financial's obligation to provide Cardtronics with a Terminal Set-up Form as follows:

> [Star Financial] shall provide [Cardtronics] with a fully and accurately completed . . . Terminal Set-up Form . . . for each Terminal subject to this Agreement prior to the date on which Services are to commence . . . [Star Financial] represents and

---

[1] Section 2.1 of the Contract, entitled "Services," provides that Cardtronics shall "drive the Terminals located at the Sites, . . . link such Terminals with one or more networks, . . . transmit Transactions initiated at such Terminals through a Network, . . . transmit electronic messages to such Terminals and . . . provide to [Star Financial] and Merchants periodic electronic reports of Transactions generated at such Terminals."

> warrants that all information in each . . . Terminal Set-up Form .
> . . shall be correct and complete. [Star Financial] must immediately
> notify [Cardtronics] in writing of any change in the information set
> forth in a Terminal Set-up Form . . . .

And, section 4.2 places the "responsibility" on Star Financial to "verify that all information contained in a Terminal Set-up Form . . . is correct and complete."

On August 19, 2015, Star Financial submitted Terminal Set-up Forms for three ATMs—Terminals A282694, A282696, and A282697—to be activated on November 1, 2015. When filling out the Terminal Set-up Forms, Star Financial mistakenly designated an account for a merchant-owned ATM belonging to third-party DC Stars, LLC, rather than Star Financial's Settlement Account. The next day, Star Financial notified Cardtronics of its mistake and provided updated Terminal Set-up Forms with the correct account number for all three terminals. Cardtronics confirmed receipt of the updated Terminal Set-up Forms but only corrected the account information for Terminal A282697. Consequently, Cardtronics credited amounts withdrawn from Terminals A282694 and A282696 to DC Stars's account, rather than to Star Financial's Settlement Account.

On March 17, 2016, Star Financial noticed an abnormal shortage of funds in its Settlement Account. Using Cardtronics's web portal, Star Financial learned that Cardtronics's failure to correct the account information for Terminals A282694 and A282696 caused that shortage and misdirected $250,900 to DC Stars's account. Within twenty-four hours of this discovery, Star Financial notified Cardtronics of the error. Star Financial recovered $95,163.69 from DC Stars but has not recovered the remaining $155,736.32.

Star Financial sued to recover the remaining funds from Cardtronics, alleging, among other things, that Cardtronics breached its obligations under the Contract "when it failed to correct the account information of Terminals

No. 17-30258

A282694 and A282696, and when it failed to reimburse Star Financial for the resulting misdirected funds." Shortly thereafter, the district court granted Cardtronics's motion for summary judgment. Star Financial timely appealed.

II.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the trial court.[2] Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.[3] On summary judgment, a court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor.[4] To survive summary judgment, the nonmovant must supply evidence "such that a reasonable jury could return a verdict for the nonmoving party."[5]

III.

To prevail on a breach of contract claim, a plaintiff must prove "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[6] The district court reached only the first element of Star Financial's breach-of-contract claim. Specifically, the court ruled that Star Financial, not Cardtronics, has the obligation to "ensure that the terminal information is correct." The court rejected Star Financial's argument that Cardtronics had an obligation to correct the account information after

---

[2] *Orthopedic & Sports Injury Clinic v. Wang Labs., Inc.*, 922 F.2d 220, 223 (5th Cir. 1991).

[3] FED. R. CIV. P. 56(a).

[4] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. App. 4 Cir. 2011).

No. 17-30258

receiving updated Terminal Set-up Forms, explaining that the "plain language of the contract itself does not provide such contingencies and it would be inappropriate for this Court to introduce them."

We conclude that the district court misread the Contract. Interpreting a contract requires determining the common intent of the parties, looking first "to the words and provisions of the contract."[7] When the words are "clear and explicit and lead to no absurd consequences," our interpretative inquiry into the parties' intent ends.[8] The district court, in relying solely on section 4.2, failed to acknowledge the plain language of section 4.1, which requires Star Financial to "immediately notify [Cardtronics] in writing of any change in the information set forth in a Terminal Set-up Form." By the words of that provision, the parties created a procedure for Star Financial to make changes, or in this case corrections, to a Terminal Set-up Form.[9]

To be sure, the Contract does not state Cardtronics's obligations upon receiving changes to a Terminal Set-up Form. However, finding that Cardtronics has *no* obligation to use correct account information—whether Cardtronics receives that information initially or subsequently via an updated Terminal Set-up Form—does not square with the Contract's repeated emphasis that Star Financial submit correct Terminal Set-up Forms. Nevertheless, reading the Contract to not impose an obligation upon Cardtronics to use correct account information after receiving updated Terminal Set-up Forms leads to the absurd consequence that Star Financial can never make effective changes to a Terminal Set-up Form despite an explicit

---

[7] *Amend v. McCabe*, 664 So. 2d 1183, 1187 (La. 1995); *see also* LA. CIV. CODE art. 2045.

[8] LA. CIV. CODE art. 2046.

[9] "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA. CIV. CODE art. 2050.

No. 17-30258

provision to the contrary.[10] Cardtronics's obligation to deploy account information in an updated Terminal Set-up Form is implicit in the contractual process for updating a Terminal Set-up Form. We therefore conclude that Cardtronics was obligated to use correct account information after receiving updated Terminal Set-up Forms to ensure proper set up of Star Financial's ATMs.

IV.

The district court's grant of summary judgment in favor of Cardtronics is reversed. This action is remanded for the district court to determine in the first instance whether Cardtronics breached its obligation under the Contract and the appropriate damages, if any.

---

[10] *See Amend*, 664 So. 2d at 1187 ("[C]ourts should refrain from construing the contract in such a manner as to lead to absurd consequences.").